UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| POLITANK, CORP.<br><br>　　Plaintiff<br><br>　　　　　　v.<br><br>ARISTEIA CAPITAL LLC; THE BAUPOST GROUP LLC, CANYON CAPITAL ADVISORS LLC, GOLDENTREE ASSET MANAGEMENT LP, SCOGGIN CAPITAL MANAGEMENT LLC, TACONIC CAPITAL ADVISORS LP, TILDEN PARK CAPITAL MANAGEMENT LP, WHITEBOX ADVISORS LLC, and SUSHEEL KIRPALANI<br><br>　　Defendants. | |

## COMPLAINT

TO THE HONORABLE COURT:

　　NOW COMES Plaintiff POLITANK, CORP., though the undersigned attorneys, and respectfully states and prays as follows:

### I.
### JURISDICTION AND VENUE

　　1.　　This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 since:

　　　　a.　　The matter in controversy in this action exceeds $75,000.00, exclusive of interest and costs, and

　　　　b.　　This action is between citizens of different States or citizens of a State and citizens or subjects of a foreign state, whereas none of the members or partners of the

Defendants is domiciled in Puerto Rico and they are all citizens of either a State or a foreign country.

2. It also has jurisdiction pursuant to 28 U.S.C. § 1367 as any claims over which the Court lacks original jurisdiction under 28 U.S.C. § 1332 are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(3), since all the Defendants are subject to the Court's personal jurisdiction with respect to the claims raised herein.

## II.
## PARTIES

4. Plaintiff POLITANK, CORP. is a corporation established pursuant to the laws of the Commonwealth of Puerto Rico, with principal offices located in 1225 Juan Ponce de Leon Avenue., Suite 1401-02 VIG Tower, San Juan, Puerto Rico 00907. Politank is a government affairs law firm which, among other things, provides consulting services to holders of bonds issued by the Commonwealth of Puerto Rico and its public corporations.

5. Collectively, Defendants COFINA SENIOR BONDHOLDER GROUP are hedge funds who hold bonds issued by the PUERTO RICO URGENT INTEREST FUND CORPORATION ("COFINA"). For purposes of this complaint, the COFINA Senior Bondholder Group are:

   a. ARISTEIA CAPITAL LLC, a Delaware limited liability corporation with principal offices located at One Greenwich Plaza, 3rd Floor, Greenwich, Connecticut 06830.

   b.   THE BAUPOST GROUP LLC, a Delaware limited liability corporation with principal offices located at 10 St. James Avenue, Suite 1700, Boston, Massachusetts 02116.

   c.   CANYON CAPITAL ADVISORS LLC, a Delaware limited liability corporation with principal offices located at 2000 Avenue of the Stars, 11th Floor, Los Angeles, California 90067.

   d.   GOLDENTREE ASSET MANAGEMENT LP, a Delaware limited partnership with principal offices located at 300 Park Avenue, 21st Floor, New York, New York 10022.

   e.   SCOGGIN CAPITAL MANAGEMENT LLC, a Delaware limited liability corporation with principal offices located at 660 Madison Avenue, New York, New York 10021-8405.

   f.   TACONIC CAPITAL ADVISORS LP, a Delaware limited liability partnership with offices located at 280 Park Avenue, 5th Floor, New York, New York 10017.

   g.   TILDEN PARK CAPITAL MANAGEMENT LP, a Delaware limited partnership with principal offices located at 452 Fifth Avenue, 28th Floor, New York, New York 10018.

   h.   WHITEBOX ADVISORS LLC, a Delaware limited liability corporation with principal place of business located at 3033 Excelsior Blvd. #300, Minneapolis, Minnesota 55416.

   6.   Defendant SUSHEEL KIRPALANI is a partner at QUINN EMANUEL URQUART & SULLIVAN LLP ("Quinn Emanuel"), with offices located at 51 Madison Avenue, 22nd Floor, New York, New York 10010. Upon information and belief, Mr. Kirpalani is a resident of the State of New York. Mr. Kirpalani is the COFINA Bondholder's main attorney within Quinn Emanuel.

## III.
## FACTS

7. On October 20, 2015, Politank and Quinn Emanuel executed an *Agreement for Consulting Services*. This *Agreement for Consulting Services* was amended, effective May 1, 2017, pursuant to a *First Amendment to Agreement for Consulting Services*. The *Agreement for Consulting Services*, together with the *First Amendment to Agreement for Consulting Services* are hereinafter referred to as the "Agreement".

8. The initial term of the Agreement was for one year, from September 17, 2015 through September 17, 2016, automatically renewed for an additional term of one year, unless terminated by either party.

9. It was agreed that the Agreement would be governed by the laws of the Commonwealth of Puerto Rico.

10. Pursuant to this Agreement, Politank was to advise Quinn Emanuel on legislation that directly affects Quinn Emanuel's interest as a representative of the COFINA Senior Bondholder Group and to lobby the various levels of the Puerto Rico Government on reaching a consensual plan for COFINA debt payment.

11. In exchange, the COFINA Senior Bondholder Group were to pay Politank, during the term of the Agreement, the amount of $55,000.00 a month which were due and payable upon receipt of the invoice. This compensation was not contingent upon the success of any undertaking under the Agreement.

12. The parties agreed to the following payment terms:

> 5.7 ***The Consultant shall issue monthly invoices, which shall be due and payable upon their receipt by the Client.*** Invoices may include expenses incurred during previous months. If any invoice remains outstanding for more than fifteen (15) days after it has become due and payable, the Consultant may cease

providing the services contracted for under this AGREEMENT until such time as payment is received. In such case, the COFINA GROUP and the CLIENT shall be solely responsible for any adverse effects that the CONSULTANT'S decision to cease providing the services may have upon the furtherance of the GOALS AND OBJECTIVES. Notwithstanding anything else in this Section 5.6, the CONSULTANT shall not cease providing any services under this AGREEMENT until the CONSULTANT has notified the CLIENT of the failure to timely pay any invoice, and has provided the CLIENT with fifteen (15) days to cure such non-payment. Notwithstanding anything else in this Section 5.6, the CONSULTANT shall not cease providing any services under this AGREEMENT as a result of the COFINA GROUP'S failure to pay any invoiced amounts which are reasonably disputed, as long as the invoiced amounts not in dispute are paid in full as they are due and the dispute is not related to the monthly retainer. (Emphasis added).

13. The Agreement also provided for a success fee under the following terms:

> 5.2 If the CLIENT or the COFINA GROUP enters into a consensual plan for COFINA that limited the impairment of the face value of the bonds, or the COFINA GROUP achieves a similar economic outcome through a means other than a consensual plan, the COFINA GROUP will pay to the CONSULTANT a success fee based on [the Recovery Value[1] of the Senior COFINA bonds] as follows:

| Recovery Value | Success Fee |
|---|---|
| ≥ 95% | $3,000,000.00 |
| 92.5% | $2,500,000.00 |
| 90% | $1,275,000.00 |
| 87.5% | $750,000.00 |
| 85% | $500,000.00 |
| 82.5% | $250,000.00 |
| <82.5% | --- |

[…]

---

[1] The *Recovery Value* of a given Senior COFINA Bond was defined as the "mean the average value at which such Senior COFINA Bond (or any bond received in exchange for such Senior COFINA Bond) trades fifteen (15) days after the execution of any consensual plan or of such any other means which achieve a similar economic outcome, divided by the average accreted value of such Senior COFINA bond as of the same date."

5

> The success fee will be due and payable to the CONSULTANT within thirty (30) days of the execution of any consensual plan or such any other means which achieve a similar economic outcome.
>
> If on/or before May 31, 2018, the CONSULTANT becomes entitled to the payment of a success fee, as set forth above, the CONSULTANT'S success fee shall be increased by an additional TWENTY PERCENT (20%) of the otherwise payable success fee.

14. The Agreement provided that, after the expiration of the first year, it could be terminated for any reason whatsoever, by giving at least 60 days' notice to the other party.

15. The Agreement could also be terminated immediately, for cause, which was defined as a violation of law, rule or regulation, or a breach of Articles 6 (regarding "Confidentiality"), 11.5 (regarding illegal activity by Politank, or causing Quinn Emanuel or the COFINA Senior Bondholder Group to engage in illegal activity)[2] or 11.6 (regarding bribery of a public official)[3] of the Agreement.

---

[2] The Agreement provides as follows:

> 11.5. [Politank] confirms that in carrying out its duties and responsibilities under this agreement, it will neither undertake nor cause to be undertaken any activity which either (i) is illegal under the laws, decrees, rules or regulations in effect in either the United States, Puerto Rico or any applicable countries; or (ii) would have the effect of causing [Quinn Emanuel] or any member of the COFINA [Bondholders] to violate any laws, decrees, rules or regulations in effect in either the United States, Puerto Rico or any applicable countries, including, but not limited to, anti-corruption laws, including the US Foreign Corrupt Practices Act or anti-boycott laws and regulations.

[3] The Agreement provides as follows:

> 11.6. With respect to or in connection with the services contemplated under this agreement, [Politank] represents and warrants to the [Quinn Emanuel] that none of Politank, its directors or employees will make or authorize or promise to make or authorize any offer, payment or gift of money or anything of significant value to any employee, public official or other person or entity employed by the government, public agency or public enterprise of any country or public international organization or any other person, to whom such offer, payment or gift of money or anything of value is prohibited by any applicable law of any applicable

16. In the case the Agreement was terminated, it was agreed that Politank would be entitled to payment for services rendered through the effective date of the termination.

17. However, if the termination was for cause, the COFINA Senior Bondholder Group would not be bound to pay Politank any success fee.

18. On April 5, 2018, Mr. Kirpalani notified Politank of the termination for cause of the Agreement.

19. Nevertheless, Politank had not incurred in any violation of law, rule or regulation, in any illegal activity or bribery nor did it breach the confidentiality provisions of the Agreement, all of which could be considered cause under the Agreement.

20. On April 6, 2018, Mr. Kirpalani reiterated to Politank "the decision to terminate with and/or without cause" the Agreement.

21. On April 13, 2018, Mr. Kirpalani wrote to Politank rejecting the validity of the invoices issued to cover the 60-day termination period, claiming that it would be a breach of the Rules of Professional Conduct of Puerto Rico to attempt to collect on these.

22. Before and after the notification of the termination, the Defendants communicated among themselves and with third parties and their representatives — including holders of bonds issued by the Commonwealth of Puerto Rico and its instrumentalities— that Politank had incurred in conduct which, under the Agreement, constituted cause to terminate the same.

23. The Defendants also communicated among themselves and with third parties and their representatives — including holders of bonds issued by the Commonwealth of Puerto Rico and its instrumentalities— that any attempt of Politank to collect on invoices for the

---

country, in order to obtain or retain business or any other improper advantage for [Quinn Emanuel] or the members of the COFINA [Bondholders]..

60-day termination period would constitute a breach of the Rules of Professional Conduct of Puerto Rico.

24. As a result of these communications, other holders of bonds issued by the Commonwealth of Puerto Rico and its instrumentalities who were clients of Politank at that time cancelled their contracts.

25. These other clients specifically informed Politank that their decision was heavily influenced by the position taken by the COFINA Senior Bondholder Group and their attorneys with respect to Politank's termination.

26. As of the date that Mr. Kirpalani notified the termination, the following invoices issued by Politank were outstanding and/or had open balances:

| Invoice no. | Date Due | Open Balance |
|---|---|---|
| 036-2017-12 | 11/21/17 | $ 2,082.08 |
| 036-2018-01 | 12/26/17 | $ 10,238.80 |
| 036-2018-02 | 1/25/18 | $ 44,101.20 |
| 036-2018-03 | 2/21/18 | $ 57,200.00 |
| 036-2018-04 | 3/21/18 | $ 57,200.00 |
| | **TOTAL** | **$170,822.08** |

27. On April 18, 2018, Politank sent the Defendants a letter demanding payment of the open balances on the aforementioned invoices.

28. Politank has also reached out to the members of the COFINA Senior Bondholder Group in an attempt to obtain payment of these open balances and avoid litigation.

29. To date, no payment has been received by Politank on these invoices.

30. Moreover, no payment has been received on the invoices issued to cover the 60-day termination period.

31. On June 5, 2018, the Agent representing the COFINA Senior Bondholder Group announced that an agreement in principle had been reached with the Agent representing the

Commonwealth[4] to resolve the dispute as to the validity of their respective claims on the revenues from the Commonwealth's sales tax.

32. Judge Laura Taylor Swain, before whom the dispute is pending, stated that she was pleased with the settlement.

33. Moreover, the Financial Oversight and Management Board has stated that it would be filing a plan of adjustment for COFINA based on this agreement in principle, possibly even before the expiration of deadline provided by Judge Taylor to the COFINA and Commonwealth representatives to file their final settlement agreement.

34. Representatives of the COFINA Senior Bondholder Group have represented to the press that the recovery value under the agreement in principle far exceeds the values at which the COFINA bonds were then trading.

35. At the time such representation was made, the bonds held by the COFINA Senior Bondholder Group were trading for more than 82.5% of their price.

36. Upon information, under this agreement in principle, the Recovery Value of the Senior COFINA bonds held by the COFINA Senior Bondholder Group will be 100%.

37. Although it is expected that the COFINA Senior Bondholder Group will negotiate the Recovery Value of their bonds downwards in order to obtain the junior or subordinated COFINA bondholders' approval for a settlement agreement, experts in the matter have suggested

---

[4] Pursuant to the *Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* issued in the Commonwealth's PROMESA TITLE III proceedings, the Commonwealth was to be represented by Creditors Committee for purposes of litigating and/or settling the Commonwealth-COFINA dispute on behalf of the Commonwealth. *In re The Financial Oversight and Management Board for Puerto Rico*, No. 17BK3283-LTS, in the U.S. District Court for the District of Puerto Rico (*Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute*, Aug. 10, 2017) (Dkt. 996).

that, at the end of the day, the Recovery Value of the Senior COFINA bonds will be between 90% and 95%.

## III.
## FIRST CAUSE OF ACTION:
## COLLECTION OF MONEYS

38. The COFINA Senior Bondholder Group owes Politank the amount of $170,822.08 for invoices issued prior to the date in which they notified the termination of the Agreement.

39. This debt is due and payable.

40. Since April 2018, Politank has been demanding payment of the outstanding amounts and, while the COFINA Senior Bondholder Group acknowledged that they owe this amount, they conditioned its payment to the waiver of Politank's other claims.

41. Thus, to this date, the COFINA Senior Bondholder Group has refused to pay for the outstanding invoices.

42. The COFINA Senior Bondholder Group is contractually liable for the payment of these invoices for services rendered.

43. The COFINA Senior Bondholder Group is also liable to Politank for interest on the overdue amounts at the legal interest rate of 6% annually ($28.08 *per diem*).

44. Accordingly, Politank demands judgment against the COFINA Senior Bondholder Group for the principal amount of $170,822.08, plus legal interest.

45. Politank also demands judgment against the COFINA Senior Bondholder Group in an amount to be determined by the Court for reasonable attorney fees because of their obstinacy in refusing to pay for their debt to Politank.

## IV.
## SECOND CAUSE OF ACTION:
## DECLARATORY JUDGMENT

46. The Agreement allows for its termination prior to the expiration of its term.

47. Termination requires at least 60-days' notice, except that termination can be effected immediately if the termination is "for cause".

48. Cause for termination is defined in the Agreement as a violation of law, rule or regulation, or the breach of certain terms of the Agreement.

49. It is Politank's position that it has not incurred in any violation of law, rule or regulation, or breached any of the specified terms of the Agreement; therefore, the Defendants could not terminate the Agreement immediately but, rather, only with a 60-day notification.

50. The Defendants have refused to acknowledge any obligation to pay Politank for the period of 60 days prior to effective date of the termination.

51. They have also insisted that they no longer have any obligation to pay Politank a success fee, alleging that they had cause to terminate the Agreement.

52. In light of the aforementioned, an actual controversy exists as to the rights and legal relations of the parties under the Agreement.

53. Accordingly, Politank demands judgment declaring that the COFINA Senior Bondholder Group could only terminate the Agreement upon 60-days' notice.

54. In consequence thereof, the COFINA Senior Bondholder Group is liable to Politank for the principal amount of $110,000.00, plus legal interest, for the monthly retainer fees incurred during the 60-day termination period.

55. Moreover, the COFINA Senior Bondholder Group is liable to Politank for the success fee due under the Agreement, which is estimated to be between $1,275,000.00 and $3,600,000.00.

56. Politank also demands judgment against the COFINA Senior Bondholder Group in an amount to be determined by the Court for reasonable attorney fees because of their obstinacy in insisting that they had cause to terminate the Agreement immediately.

## V.
## THIRD CAUSE OF ACTION:
## LIBEL AND SLANDER

57. The Defendants informed other third parties and their representatives — including holders of bonds issued by the Commonwealth of Puerto Rico and its instrumentalities—that their Agreement with Politank had been terminated for cause because Politank incurred in a violation of law.

58. The Defendants also informed other third parties and their representatives—including holders of bonds issued by the Commonwealth of Puerto Rico and its instrumentalities—that Politank was breaching the Rules of Professional Conduct of Puerto Rico for attempting to collect on the invoices issued for the 60-day termination period.

59. These statements are false because Politank has not committed any wrongdoing constituting cause under the Agreement and because Politank's attempts to collect on the debt owed by the COFINA Senior Bondholders do not constitute a breach of the Rules of Professional Conduct of Puerto Rico.

60. These statements were made by the Defendants with full knowledge of their falsehood.

61. Mr. Kirpalani and the COFINA Senior Bondholders Group's other attorneys are fully aware that a corporation is a separate entity from its shareholders and any allegations of personal wrongdoing by its shareholders cannot be attributed to the corporation.

62. In any event, none of Politank's shareholders have been found to have incurred in any wrongdoing which would constitute cause under the Agreement.

63. Mr. Kirpalani and the COFINA Senior Bondholders Group's other attorneys are also fully aware that there is no such thing as the "Rules of Professional Conduct of Puerto Rico" and that the ethical rules applicable to attorneys do not apply to corporations such as Politank.

64. These statements by Mr. Kirpalani and the COFINA Senior Bondholder Group's other attorneys were made with malice, in order to harm Politank's reputation and standing with the COFINA Senior Bondholder Group, other holders of bonds issued by the Commonwealth of Puerto Rico and its instrumentalities, and Politank's other clients.

65. Moreover, Mr. Kirpalani and the COFINA Senior Bondholder Group's other attorneys are competitors of Politank and have, throughout the term of the Agreement, attempted to discredit Politank before the COFINA Senior Bondholder Group by constantly taking credit for trade information gathered by Politank and for actions taken by Politank for the benefit of the COFINA Senior Bondholder Group, and disparaging Politank's work before the COFINA Senior Bondholder Group.

66. The statements made by the Defendants have harmed Politank's reputation with other clients, and among the other holders of bonds issued by the Commonwealth and its instrumentalities.

67. The statements made by the Defendants have caused other clients of Politank to cancel their consulting contracts.

68. Accordingly, Politank demands judgment against the Defendants for damages caused by libelous and slanderous statements they published, of at least $ 1,000,000.00.

## VI.
## FOURTH CAUSE OF ACTION:
## TORTIOUS INTERFERENCE

69. Prior to April 6, 2018, Politank had consulting contracts with other holders of bonds issued by the Commonwealth of Puerto Rico and its instrumentalities.

70. The Defendants knew of these consulting contracts.

71. The Defendants communicated with these clients and disparaged Politank, which compelled them to cancel their contracts with Politank.

72. On April 6, 2018, one of Politank's other bondholder clients notified the termination their consulting contract with Politank.

73. The client informed Politank that it was pressured into making such decision by the Defendants' statements.

74. The Defendants intentionally and tortiously interfered with the contractual relationship between Politank and its other bondholder client.

75. The Defendants' actions are the direct cause of the decision by Politank's other bondholder clients to terminate their consulting contract with Politank.

76. Accordingly, Politank demands judgment against the Defendants for their tortious interference with Politank's contractual relations with its clients for, at least, $160,000.00.

## VII.
## DEMAND FOR JURY TRIAL

77. Politank demands that this action be tried by a jury.

WHEREFORE, Politank Corp. requests from this Honorable Court that, after a trial by jury, a judgment be issued against the Defendants as follows:

    a.    A judgment against the COFINA Senior Bondholder Group for the principal amount of $170,822.08, plus legal interest from the date the debt was due and until it is paid in full;

    b.    A judgment declaring that the COFINA Senior Bondholder Group could only terminate the Agreement upon 60-days' notice and that, in consequence thereof,

        i.    The COFINA Senior Bondholder Group are liable to Politank for the monthly retainer fees incurred during the 60-day termination period in the principal amount of $110,000.00, plus legal interest from the date the debt was due and until it is paid in full, and

        ii.    Moreover, the COFINA Senior Bondholder Group is liable to Politank for the success fee due under the Agreement, which is estimated to be between $1,275,000.00 and $3,600,000.00, plus legal interest from the date the debt is due and until it is paid in full.

    c.    A judgment against the Defendants for damages caused by libelous and slanderous statements they published, for at least $1,000,000.00;

    d.    A judgment against the Defendants for their tortious interference with Politank's contractual relations with its clients, for at least, $160,000.00;

    e.    A judgment against Defendants for attorney fees because of their obstinacy in refusing to pay for their debt to Politank;

    f.    A judgment against Defendants for attorney fees because of their obstinacy in insisting that they had cause to terminate the Agreement immediately;

   g. A judgment against Defendants for the court costs and expenses incurred in this case; and

   h. Any further relief as the circumstances of this case may justify.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 3rd day of July, 2018.

| MONSERRATE SIMONET & GIERBOLINI | ESTUDIO LEGAL FERRAIUOLI |
|---|---|
| ✉: 101 Ave. San Patricio, Suite 1120 | ✉: P.O. Box 195384 |
| Guaynabo, Puerto Rico 00968-2646 | San Juan, Puerto Rico 00919-5384 |
| ☎: (787) 620-5300   📠: (787) 620-5305 | ☎: 787.296.4733   📠: 787.296.4430 |
| s/ *Dora L. Monserrate-Peñagarícano* | s/ *Veronica Ferraiuoli Hornedo* |
| Dora L. Monserrate Peñagarícano | Veronica Ferraiuoli Hornedo |
| U.S.D.C. – PR 212612 | U.S.D.C. – PR 213814 |
| 💻: dmonserrate@msglawpr.com | 💻: vero@ferraiuoli.pr |