IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| POLITANK, CORP., | Civil Action No. 3:18-cv-01439 (JAG) |
|     Plaintiff, | |
|         v. | |
| ARISTEIA CAPITAL LLC; THE BAUPOST GROUP LLC; CANYON CAPITAL ADVISORS LLC; GOLDENTREE ASSET MANAGEMENT LLC; SCOGGIN CAPITAL MANAGEMENT LLC; TACONIC CAPITAL ADVISORS LP, TILDEN PARK CAPITAL MANAGEMENT LP, WHITEBOX ADVISORS LLC, and SUSHEEL KIRPALANI, | |
|     Defendants. | |

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

TABLE OF CONTENT

I.   SUMMARY OF THE ARGUMENT ............................................................... 1

II.   FACTUAL BACKGROUND ....................................................................... 2

   A.   THE AGREEMENT ............................................................................... 2

   B.   THE SUCCESS FEE .............................................................................. 3

   C.   TERMINATION ..................................................................................... 4

   D.   THE CAUSE FOR TERMINATION ........................................................ 4

   E.   THE AGREEMENT IN PRINCIPLE ........................................................ 7

III.   STANDARD OF REVIEW ......................................................................... 8

IV.   GROUNDS FOR DISMISSAL .................................................................... 8

   A.   THE SECOND, THIRD AND FOURTH CAUSES OF ACTION MUST BE DISMISSED BECAUSE THEY DO NOT REACH THE LEVEL OF THE PLEADING STANDARDS UNDER RULE 12(B)(6) SCRUTINY ............................................................................................ 8

   B.   THE THIRD AND FOURTH CAUSES OF ACTION MUST BE DISMISSED FOR FAILURE TO STATE AN INDIVIDUALIZED CLAIM AGAINST EACH DEFENDANT ............................................. 9

   C.   SECOND CAUSE OF ACTION: THE PLAINTIFF IS NEITHER ENTITLED TO FEES DURING THE TERMINATION PERIOD NOR TO THE SUCCESS FEE POST TERMINATION ....................... 10

      1.   DECLARATORY JUDGMENT REQUESTED IS IMPROPER: There was cause for termination, thus a declaratory judgment to the contrary must not issue.............. 10

      2.   SUCCESS FEE CLAIM IS UNRIPE: This Honorable Court lacks subject matter jurisdiction to address Plaintiff's claim that it is entitled to the success fee. The matter is unripe, because the COFINA Group has not entered into a consensual plan of adjustment. ................................................................................................ 16

   D.   THIRD CAUSE OF ACTION: THE ALLEGATIONS REGARDING LIBEL AND SLANDER ARE INSUFFICIENT TO ESTABLISH ACTUAL MALICE, HARM, OR A CAUSAL CONNECTION BETWEEN DEFENDANTS' CONDUCT AND ANY REPUTATIONAL HARM. THESE ALLEGATIONS, THUS, DO NOT STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. ................................. 19

      1.   The Complaint fails to plead facts sufficient to establish the element of malice. ... 20

      2.   The Complaint fails to plead facts sufficient to establish the elements of causation and actual harm. ................................................................................................ 21

      3.   The Complaint alleges facts insufficient to establish that informing others that Politank was in breach of the Rules of Professional Conduct of Puerto Rico for attempting to collect the invoices issued for the 60-day termination period, constituted defamation. ................................................................................................ 21

**E.   FOURTH CAUSE OF ACTION: T**HE ALLEGATIONS REGARDING TORTIOUS INTERFERENCE ARE INSUFFICIENT TO IMPOSE LIABILITY ON **D**EFENDANTS. **T**HEREFORE, THE **F**OURTH **C**AUSE OF **A**CTION SHOULD BE DISMISSED. ............................................................... 22

**F.   THE FIRST CAUSE OF ACTION: S**HOULD **B**E **D**ISMISSED: **D**EFENDANTS **W**ILL **D**EPOSIT **W**ITH **T**HE **C**OURT **T**HE **O**UTSTANDING **F**EES ........................................................ 24

**V.   CONCLUSION** ................................................................................................. 25

TABLE OF AUTHORITIES

## United States Supreme Court

Abbott Labs. v. Gardner, 387 U.S. 136 (1967)............................................................... 18
Ashcroft v. Iqbal, 556 U.S. 662 (2009)............................................................ 9, 10, 27
Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459
   U.S. 519 (1983)...................................................................................................... 10
Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ................................................................ 9
Reg'l Rail Reorg. Act Cases, 419 U.S. 102 (1974)......................................................... 19
Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007) ............................... 5
Texas v. U.S., 523 U.S. 296 (1998) ................................................................................ 18
Thomas v. Union Carbide Agr. Products Co., 473 U.S. 568 (1985) ............................. 18

## Puerto Rico Supreme Court Case Law

BPPR v. Sucesion Talavera, 174 D.P.R. 686 (2008)....................................................... 16
Dennis, Metro Invs. v. City Fed. Savs., 121 D.P.R. 197 (1988)................................... 13
Dolphin v. Ryder, 127 D.P.R. 869 (1991) ...................................................................... 25
Garcia v. World Wide Entmt. Co., 132 D.P.R. 378 (1992) ........................................... 15
Garib Bazain v. Clavell, 135 D.P.R. 475 (1994) ..................................................... 23, 24
Gen. Office Prods. v. A.M. Capen's, 115 D.P.R. 553, 15 P.R. Offic. Trans. 727 (P.R. 1984)25, 26
In re Rivera Herrans, 195 D.P.R. 689 (2016) ................................................................ 17
Ramírez v. Club Cala de Palmas, 123 D.P.R. 339, 23 P.R. Offic. Trans. 311 (1989)................ 14
Villanueva v. Hernández Class, 128 D.P.R. 618, 642, 28 P.R. Offic. Trans. 618 (1991) ...... 22, 23

## United States Court of Appeals for the First Circuit

Aponte v. Calderon, 284 F.3d 184 (1st Cir. 2002) ....................................................... 22
Baltodano v. Merk, Sharp & Dohme (I.A.) Corp., 637 F.3d 38 (1st Cir. 2011).......................... 22
Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530 (1st Cir.1995) ............... 19
Ernst & Young v. Depositors Economic Protection Corp., 45 F.3d 530 (1st Cir.1995) ............. 19
In re Colonial Mortgage Bankers Corp., 324 F.3d 12 (1st Cir. 2003) ..................................... 6, 10
Mangual v. Rotger–Sabat, 317 F.3d 45 (1st Cir.2003)................................................... 18, 19, 20
Miss. Pub. Emps.' Ret. Sys. V. Boston Sci. Corp., 523 F.3d 75 (1er Cir. 2008) ......................... 5
New Comm Wireless Services, Inc. v. SprintCom, Inc., 287 F.3d 1 (1st Cir. 2002) ............. 26, 27
Shay v. Walters, 702 F.3d 76 (1st Cir. 2012) ................................................................. 23
Sindicato Puertorriqueño de Trabajadores, SEIU Local 1996 v. Fortuno, 699 F.3d 1 (1st
   Cir.2012) .......................................................................................................... 19, 20
United States v. Bello, 194 F. 3d 18 (1st Cir. 1999)........................................................ 6
Verizon New Eng., Inc. v. Int'l Bhd. of Elec. Workers, Local No. 2322, 651 F.3d 176 (1st
   Cir.2011) .................................................................................................................. 20
Wells Real Estate Inv. Trust II, Inc. v. Chardon/Hato Rey Partnership S.E., 615 F.3d 45 (1st Cir.
   2010).......................................................................................................................... 14

**United States District Court for the District of Puerto Rico**

A.M. Capen's Co., Inc. v. Am. Trading & Prod. Corp., 200 F.Supp.2d 34 (D.P.R. 2002) .......... 26
Alpha Biomedical and Diagnostic Corp. v. Philips Medical Systems Netherland BV, 828
    F.Supp.2d 425 (D.P.R. 2011) .......................................................................... 26, 27
MMB Development Group, Ltd. v. Westernbank Puerto Rico, 762 F.Supp.2d 356 (D.P.R. 2010)
    .................................................................................................................. 25, 27
Segarra Jimenez v. Banco Popular, Inc., 421 F.Supp.2d 452 (D.P.R. 2006) ............................ 24
Total Petroleum Puerto Rico v. Torres-Caraballo, 672 F.Supp.2d 252 (D.P.R. 2009) ................ 6

**Other United States Court Case Law**

Impac Warehouse Lending Grp. v. Credit Suisse First Boston Corp., No. SA CV 04-1234 CWX,
    2006 WL 6935318, at *6 (C.D. Cal. June 20, 2006) ................................................. 10
Joseph v. Bernstein, 612 F. App'x 551 (11th Cir. 2015) ...................................................... 10
River City Capital, L.P. v. Bd. Of County, 491 F.3d 301 (6th Cir. 2007) ................................. 20
Simmonds v. INS, 326 F.3d 351 (2d Cir.2003) .................................................................. 20

**Puerto Rico Laws**

31 L.P.R.A § 3475 ..................................................................................................... 14
31 L.P.R.A §3471 ...................................................................................................... 14
Article 1115 of the Civil Code, 31 LPRA § 3165 ................................................................ 15
Article 1207 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3372 ............................................ 13
Article 1210 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3375 ............................................ 13
Article 1802 of Puerto Rico's Civil Code, 31 L.P.R.A. § 5141 ........................................ 22, 25
Article 7 of the Puerto Rico Civil Code. 31 L.P.R.A. § 7 ...................................................... 15
Article II § 8 of the Commonwealth Constitution ................................................................ 22
Libel and Slander Act of 1902, 32 L.P.R.A. § 3141 et seq ..................................................... 22
Rule 19 of the Code of Professional Ethics ....................................................................... 17

**Federal Rules of Civil Procedure**

Rule 12(b) ............................................................................................... 1, 5, 6, 7, 9
Rule 56 .................................................................................................................... 7
Rule 8 ................................................................................................................ 10, 27

**Federal Rules of Evidence**

Rule 201 ............................................................................................................... 6, 8
Rule 201 (b)(2) .......................................................................................................... 6

**Treatists**

5B Wright & Miller § 1357 (3d ed.2004 and Supp.2007) ...................................................... 5
Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1366 (3d ed.) ................................................ 5
Wright & Miller, Federal Practice & Procedure Juris. §3532 (3d. ed.) ..................................... 18

Defendants, **ARISTEIA CAPITAL LLC**; **THE BAUPOST GROUP LLC**; **CANYON CAPITAL ADVISORS LLC**; **GOLDENTREE ASSET MANAGEMENT LLC**; **SCOGGIN CAPITAL MANAGEMENT LLC**; **TACONIC CAPITAL ADVISORS LP**; **TILDEN PARK CAPITAL MANAGEMENT LP**; **WHITEBOX ADVISORS LLC**; and **SUSHEEL KIRPALANI** (collectively, "the COFINA Group" or "co-defendants"), respectfully submit this Motion to Dismiss the Complaint and Memorandum of Law in Support Thereof pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure seeking to dismiss with prejudice the Complaint filed by Politank, Corp. ("Politank").

## I.      SUMMARY OF THE ARGUMENT

Three years ago, a number of holders of COFINA Senior bonds (the "COFINA Senior Group") pooled efforts and resources to identify solutions to the complex problem of the public debt that burdens the government and people of Puerto Rico and that impacts investors—big and small—within and outside the island. As part of their efforts, those holders and their legal counsel, who are now Defendants in this action, sought the advice and representation of Mr. Francisco Domenech, a well-known Puerto Rico lawyer and lobbyist. The COFINA Senior Group engaged Mr. Domenech through his firm, Politank, to help them understand and navigate local politics and media, and to identify and promote opportunities that would lead to a consensual plan of adjustment for COFINA and the Commonwealth of Puerto Rico.

When they decided to engage Mr. Domenech, the holders of COFINA Senior Bonds considered not only his professed skills and expertise, but also their understanding of his integrity and good standing on the island, characteristics that are indispensable for someone charged with representing institutions and advocating positions before the highest levels of government and other public institutions. On April 5, 2018, Defendants found out through the island media that, five days prior, Domenech had been arrested and accused of domestic battery stemming from

1

sworn allegations made against him by his wife, Verónica Ferraiuoli Hornedo. Defendants also learned from the media that a court had found probable cause to issue an arrest warrant against him, that the court had set bail, and that it had issued a protective order against him and in favor of Ms. Ferraiuoli-Hornedo. The news reports, substantiated by police and court records, detailed gross allegations of violent, reprehensible conduct. As a result, the COFINA Senior Group, was left no other reasonable choice than to sever ties with Domenech.

Domenech, through Politank, has filed the captioned complaint against the Defendants, his former clients, arguing there was no cause to terminate the relationship between them. Though the complaint ignores the proverbial elephant in the room, this Court need not do so. As is detailed below, this Court may consider in this motion the public records of domestic battery and abuse to conclude there was cause to terminate his services. The rest of Domenech's claims, to wit, for libel and slander and tortious interference, fall like dominoes with the finding of cause. They also suffer from other pleading deficiencies. We address them all next, with the prayer that the Court dismiss the entire complaint with prejudice.

## II.    FACTUAL BACKGROUND

### A.    THE AGREEMENT

On October 20, 2015, Politank, who presents itself as a "government affairs law firm",[1] and Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel"), entered into an Agreement for Consulting Services. Said Agreement was amended, effective May 1, 2017, pursuant to a First Amendment to Agreement for Consulting Services.[2] Collectively, the Agreement and the Amendment will be hereinafter referred to as the "Agreement". **Dkt. 1 ¶ 7.**

---

[1] See Exhibit 1, which is the Agreement for Consulting Services (in Politank's letterhead).

[2] See Exhibit 2, which is the First Amendment to Agreement for Consulting Services.

Pursuant to Sec. 1.5 of the Agreement, Mr. Francisco Domenech ("Domenech") was designated as the Consultant's (that is, Politank's) Representative. Domenech is a lawyer admitted to practice in Puerto Rico and before this court. As such, he was the person invested with the obligation to "carry out all or any functions authorized to be performed on Politank's behalf or required of it under the Agreement". Under the contract, Domenech, as the Consultant Representative, was to: (1) develop a business strategy plan in conjunction with the client; (2) provide weekly reports; (3) advise the client on government relations strategy; (4) arrange visits with and contact key government officials; (5); and provide media monitoring and media relations. His efforts were mainly directed at the Executive and Legislative branches of Government, the Resident Commissioner and the municipalities, in matters relevant reaching a consensual plan of adjustment. **See Exhibit 1, Agreement §§ 2.1 and 3.1.**

In exchange for the services rendered, the COFINA Group agreed to pay Plaintiff a monthly fee of $55,000 during the term of the Agreement. **Dkt. 1 ¶ 11.**

### B.   THE SUCCESS FEE

The Agreement also provided for a success fee due and payable only under the following circumstances:

> If the CLIENT or the COFINA Group **enters into a consensual plan** for COFINA that limits the impairment of the face value of the bonds or the COFINA Group achieves a similar outcome through a means other than a consensual plan, the COFINA Group shall pay to the consultant a success fee based on the simple average recovery value of all COFINA senior bonds […].

**Exhibit 1, Agreement § 5.2** (emphasis ours).

Only if the conditions set forth in Sec. 5.2, *supra*, were met, was the COFINA Group obligated to pay said success fee "within thirty (30) days of the execution of any consensual plan or such any other means which achieve a similar outcome." **Dkt. 1 ¶ 13.** Such success fee was

based on the **average trading value of the bond, fifteen days after the execution of any consensual plan of adjustment** or such other means achieving a similar result. **Dkt. 1 ¶ 13**.

The right to the success fee terminates six (6) months after termination of the Agreement or immediately if termination of the Agreement is for cause. **Exhibit 1, Agreement § 5.3**.

### C.    TERMINATION

As set forth in Sec. 9.2 of the Agreement, after the expiration of the first year, either party could terminate it for any reason, by giving at least sixty (60) days' notice to the other party. **Exhibit 1, Agreement C§ 9.2**. Under Sec. 9.1, such termination was effective upon receipt of notice. **Exhibit 1, Agreement § 9.1**.

Also, Quinn Emanuel was entitled to terminate the Agreement immediately for cause. As per Sec. 9.3 of the Agreement, "for cause" *shall include*, among other reasons, "a violation of law, rule or regulation". **Exhibit 1, Agreement § 9.3**. The Agreement further provides that, "in the event that [Quinn Emanuel] terminates the Agreement for cause, neither [Quinn Emanuel] nor any member of the COFINA Group shall have any obligation for any payment [of the success fee]." **Exhibit 1, Agreement § 9.3, and Dkt. 1 ¶ 17**.

### D.    THE CAUSE FOR TERMINATION

On April 5, 2018, after learning of the criminal conduct imputed against Domenech, Mr. Susheel Kirpalani ("Mr. Kirpalani") notified Politank of the termination for cause of the Agreement, pursuant to Article 9.3. **Dkt. 1 ¶18**. The termination notice to which the Complaint refers remarks as follows: "…we are extremely troubled by this morning's news reports that highlight the felony criminal charges for domestic violence pending against you since April 1, 2018." **Exhibit 3, Agreement Termination Notice**. The remarks refer to the press coverage that began that day, of certain felony criminal charges for domestic violence filed against Politank's Representative under the Agreement, Domenech, by his wife. **See Exhibits 4-15**. The charges

resulted in the attached Protective Order dated April 2, 2018. **See Exhibit 25 (Protective Order) and Exhibit 26 (Certified Translation of Protective Order)**. According to the protective order, covered in detail in the press reports, Domenech broke his wife's cellphone, attempted to tie her wrists, punched her in the abdomen, tore her off her bode, removed her from their home during the early morning hours, threatened her and burned her belongings. The protective order further states that, "[o]n April 2, 2018, probable cause was determined against [Domenech] under rule [of Criminal Procedure] 6 due to two violations to Art. 3.1 of Act 54. [Domenech] was notified of the activation of the protection order in open court." **See Exhibits 25 and 26**. Further, Domenech was required to post $10,000.00 in bail for each violation. **See Exhibits 4, 5, 10, 11, 14-18, 20 and 21**.

According to the public reports, by April 5, 2018, other Politank's clients and relations began to distance themselves from Domenech. **See Exhibits 8, 9, 10 and 11**.

The unfortunate developments described above can be considered in a motion under Rule 12(b), because they regard matters as to which the court can take judicial notice.[3] The Court, thus, can take judicial notice of the police report and Protective Order, of the finding of probable cause and bail against Domenech and of the widespread public coverage of all of these facts by the press. **See Exhibits 6, 7, 25, and 26.** The first two are public documents issued in a criminal proceeding.

---

[3] Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1366 (3d ed.) (the following matters are not extraneous to the allegations, among others: "matters of which the district court can take judicial notice, and items of unquestioned authenticity that are referred to in the challenged pleading and are "central" or "integral" to the pleader's claim for relief.). See also, e.g., *Miss. Pub. Emps.' Ret. Sys. V. Boston Sci. Corp.*, 523 F.3d 75, 86 (1er Cir. 2008) (the court may consider documents whose authenticity is not in dispute, documents central to the complaint and documents referred to in the complaint).

See also *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice". Citing, 5B Wright & Miller § 1357 (3d ed.2004 and Supp.2007).

The second are publications from news sources. All are either generally known or easily accessible online and their authenticity cannot be reasonably questioned. *Federal Rule 201 (b)(2) of Evidence*.[4]

The First Circuit Court of Appeals recognizes that an action can be dismissed on the basis of an affirmative defense in a motion under Rule 12(b)(6), as long as the facts "from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice ....conclusively establish the affirmative defense." *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003). A court therefore may take judicial notice of facts outside the complaint when adjudicating a motion to dismiss based on an affirmative defense. See also, *Total Petroleum Puerto Rico v. Torres-Caraballo*, 672 F.Supp.2d 252, 256 (D.P.R. 2009) (judicial notice can be taken over documents that can be found "[u]pon performing the most basic internet searches"). That is precisely the case with the news reports attached to this Motion.

To the extent the arrest report, Protective Order, and the press coverage are matters of which the court can take judicial notice, they are not extraneous to the pleadings. It is therefore possible to consider them under this Rule 12(b) motion to establish the affirmative defense of "cause" for termination, without converting this Motion into one under Rule 56 of the Federal Rules of Civil Procedure.

---

[4] Under Federal Rule 201 of Evidence, 28 U.S.C.A. R. 201:

> The court may judicially notice a fact that is not subject to reasonable dispute because it:
> (1) is generally known within the trial court's territorial jurisdiction; or
> (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

See, *United States v. Bello*, 194 F. 3d 18, 23 (1st Cir. 1999) ("By "generally known" Rule 201(b)(1) "must refer to facts which exist in the unaided memory of the populace; if the fact is one that a reasonable person would not know from memory but would know where to find, it falls within subdivision (2)…".)

### E.     THE AGREEMENT IN PRINCIPLE

According to the Complaint, on June 5, 2018, the Agent representing COFINA announced that "an agreement in principle" had been reached with the Agent representing the Commonwealth to resolve the dispute as to the validity of their respective claims on the revenues from the Commonwealth's sales tax. **Dkt. 1 ¶¶ 31-37**. The agreement in principle to which this averment refers was announced by the Agents via Joint Urgent Motion filed in Adversary Proceeding 17-00257, pending before the United States District Court for Puerto Rico. The motion contains the following warning:

> Although the Agents have reached an agreement in principle, holders of claims that would be affected by a settlement should be aware that **there are various conditions precedent and subsequent that may prevent the settlement from ever becoming effective**.(emphasis ours).

Thus, the negotiations among the different COFINA stakeholders did not end with said agreement in principle. Subsequently, on August 29, 2018, the COFINA Senior Bondholders Coalition (the "Coalition"), the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), the Puerto Rico Fiscal Agency & Financial Advisory Authority ("AAFAF"), and major COFINA stakeholders reached a Plan Support Agreement ("PSA").[5]

The PSA outlines the formal conditions and terms for COFINA's restructuring and sets October 15, 2018 as the date when the Oversight Board must file a proposed Consensual Plan of Adjustment for COFINA ("CPA") with the Title III Court, to seek its judicial approval. **Exhibit 31, PSA §§ 1.2 and 4.1(a)**. According to the PSA, the CPA cannot be finalized or executed without a Confirmation Order from the Court. The "effective date" of said CPA:

> shall be the tenth (10th) calendar day following the date on which all conditions to the effectiveness of the [CPA] have been satisfied or waived in accordance with its terms and the transactions contemplated by the [CPA] and authorized by the Title

---

[5]     The    Oversight    Board    has    published    copy    of    the    PSA    at https://juntasupervision.pr.gov/documents/.

III Court **pursuant to the Confirmation Order** have been substantially consummated; provided, however, that the Oversight Board, in its sole and absolute discretion, and upon notice to the Parties, may consummate such contemplated transactions on such earlier date as all conditions to the effectiveness of the Plan have been satisfied or waived in accordance with its terms. (emphasis ours).

Under the PSA, a "**Confirmation Order**" "shall mean the order of the Title III Court confirming the CPA in accordance with Section 314 of PROMESA and section 1129 of the Bankruptcy Code made applicable in the Title III Case in accordance with Section 301 of PROMESA, which order shall be in form and substance reasonably satisfactory to each Party." **Exhibit 31, PSA § 1.2**.

This Honorable Court can take judicial notice of the PSA and of the fact that, to date, no "consensual plan of adjustment" or other "similar means" has been filed or approved in COFINA's T.III case, 17-03203. *Federal Rule 201 of Evidence*.

## III.   STANDARD OF REVIEW

In this motion we will argue that the court lacks subject matter jurisdiction to assert the claim related to the success fee, which claim is unripe. See Fed. R. Civ. P. 12(b)(1). We will also argue that the pleadings are insufficient to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). The filing of this Motion does not constitute waiver of any claim movants may have against plaintiff.

## IV.   GROUNDS FOR DISMISSAL

### A.   The Second, Third and Fourth Causes of Action Must Be Dismissed Because they Do Not Reach the Pleading Standards Under Rule 12(b)(6) Scrutiny

To survive a motion to dismiss under Federal Rule 12(b)(6) of Civil Procedure, a complaint must both assert a "plausible" claim and set forth "sufficient factual matter" to support it. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements

of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. In other words, when evaluating whether a complaint states a claim for relief, conclusory allegations should be disregarded. *Id.* Moreover, "[i]t is not … proper to assume that [plaintiff] can prove facts that it has not alleged." *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

As discussed below, Plaintiff's Second, Third and Fourth causes of action fail to state a claim either because they are merely "formulaic recitation of the elements of a cause of action".[6], or because it is proper to dismiss them on the grounds of an affirmative defense that can be adjudicated on the basis of facts of which the court can take judicial notice.[7]

### B. THE THIRD AND FOURTH CAUSES OF ACTION MUST BE DISMISSED FOR FAILURE TO STATE AN INDIVIDUALIZED CLAIM AGAINST EACH DEFENDANT

Similarly, and significantly, a complaint misses pleading standards if it indiscriminately groups defendants together, generally accusing them of the acts complained, without articulating the factual basis for each defendant's liability. *Joseph v. Bernstein*, 612 F. App'x 551, 555 (11th Cir. 2015). "The existence of multiple defendants makes application of the particularity requirements essential. Even under the relaxed pleading standing of Rule 8(a) of Civil Procedure,

---

[6] *Ashcroft v. Iqbal*
[7] *In re Colonial Mortgage Bankers Corp.*, *supra.*

a plaintiff must particularize its allegations against each defendant so as to put each defendant on notice of the allegations against it." *Impac Warehouse Lending Grp. v. Credit Suisse First Boston Corp.*, No. SA CV 04-1234 CWX, 2006 WL 6935318, at *6 (C.D. Cal. June 20, 2006), subsequent history omitted.

The Third (alleged libel and slander) and Fourth (alleged tortious interference) causes of action make absolutely no specific factual allegations against any of the Defendants other than Mr. Susheel Kirpalani. Accordingly, regarding these causes of action, the claims against all defendants other than Mr. Kirpalani must be dismissed for failure to state an individual claim against each of them.

## C. SECOND CAUSE OF ACTION: THE PLAINTIFF IS NEITHER ENTITLED TO FEES DURING THE TERMINATION PERIOD NOR TO THE SUCCESS FEE POST TERMINATION

### 1. DECLARATORY JUDGMENT REQUESTED IS IMPROPER: There was cause for termination, thus a declaratory judgment to the contrary must not issue.

In its Second Cause of Action, Plaintiff asks for a Declaratory Judgment that Politank did not incur in a "violation of law", and therefore Defendants could only terminate the Agreement by providing sixty-days' advance notice. It claims this entitles Politank to the monthly retainer fee during the sixty-day termination period and to an "estimate[d]" success fee. **Dkt. 1 ¶¶ 49, 53-55**. Even taking as true the well pleaded facts of the Complaint, there was "cause" to terminate the Agreement. For that reason, the Court should deny the Second Cause of Action request for a declaratory judgment to the contrary.

#### a. The Agreement's concept of "cause" includes those attributable to the person charged with performing the personal representation services under the agreement (Domenech).

As discussed earlier, Sec. 9.3 of the Agreement stipulates that "the Client **shall have the right to terminate this Agreement immediately for cause**." The Agreement defines "cause" to

"include" a violation of law, rule or regulation, among other instances. It <u>does not</u> specify that the "violation" has to be by Politank as a legal entity. After all, without a natural person, Politank can render no services.

In this case, the termination notice to which the Complaint refers, points to conduct by Domenech: "…we are extremely troubled by this morning's news reports that highlight the felony criminal charges for domestic violence pending against you since April 1, 2018." **See Exhibit 3**. The reports in question developed as follows.

As reported by the news and as determined by the Hon. Keila Marie Diaz Morales, Judge at the Puerto Rico Court of First Instance, Ms. Verónica Ferraiouli[8] leveled against her husband, Francisco Domenech, certain serious domestic violence charges that led the Judge to issue a Protective Order on April 2, 2018. **Exhibits 25 and 26**. The criminal and domestic abuse accusations against Domenech, first made by his wife, believed by a judge, and then publicized by the media, constitute "cause" for termination of the Agreement.

> **b.**   **As Politank's designated representative under the Agreement, Domenech's criminal and domestic abuse accusations constitute a "violation of law" that provides cause under the Agreement.**

As Politank's designated representative, Domenech was invested with the obligation to "carry out all or any functions authorized to be performed on Politank's behalf or required of it under the Agreement". Pursuant to said obligations, Domenech was to: (1) develop a business strategy plan in conjunction with the client; (2) provide weekly reports; (3) advise the client on government relations strategy; (4) arrange visits with and contact key government officials; and (5) provide media monitoring and media relations. His efforts were directed mainly at the Executive and Legislative Branches of the Government of Puerto Rico, the Resident

---

[8] Ms. Ferraiouli is counsel of record in the captioned litigation.

11

Commissioner, and the Municipalities, on reaching a consensual plan for COFINA debt payment. It follows that, if Domenech is the Consultant Representative for all purposes under the Agreement, and the Agreement is one for the performance of lobbying services, then "cause" for termination must include those that relate to Domenech, and not just to Politank as a legal entity.

Clearly, the obligations under the Agreement were of a personal nature. The ability to represent effectively depends upon an individual's connections, access, character and reputation. Situations that diminish said qualities necessarily impact the individual's ability to lobby. Under the Agreement with Politank, the Defendants engaged Domenech's representation and persuasion capability. The agreement so designates and specifies, leaving no room for a replacement or alternative. Ultimately, therefore, if Domenech is implicated in criminal conduct, or his reputation is tarnished by detailed accusations of domestic abuse, a felony arrest and freedom under bond, his attributes and ability as a lobbyist are inevitably undermined or obliterated. This, in turn, renders the contract with Politank useless at best, and at worst, a liability for the Defendants. This necessarily means that Domenech's conduct is inevitably relevant to the determination of whether there is "cause" for termination of Politank under the Agreement.

Under the freedom of contract principle that governs in Puerto Rico, contracting parties "may make the agreement and establish the clauses and conditions which they may deem advisable, provided they are not in contravention of law, morals, or public order." Article 1207 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3372; *see also*, *Dennis, Metro Invs. v. City Fed. Savs.*, 121 D.P.R. 197 (1988). Parties are bound not only to the express terms of an agreement but also to all the consequences which, according to their character, are in accordance with good faith, use and law. Article 1210 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3375; *see also*, *Ramírez v. Club Cala de Palmas*, 123 D.P.R. 339, 23 P.R. Offic. Trans. 311 (1989).

The terms of a contract "should be interpreted in relation to one another, giving to those that are doubtful the meaning which may appear from the consideration of all of them together." 31 L.P.R.A § 3475. If the terms are clear and leave no doubt as to the contracting parties' intentions, their literal sense shall be observed. If the words should appear contrary to the parties' intention, their intention shall prevail. 31 L.P.R.A §3471. Contractual intent, in turn, is determined in consideration of the occasion, the circumstances, the persons involved, and the agreement they intended to negotiate. *Wells Real Estate Inv. Trust II, Inc. v. Chardon/Hato Rey Partnership S.E.*, 615 F.3d 45 (1st Cir. 2010).

Here, the terms of the contract are clear and unambiguous. Politank designated Mr. Domenech as the person responsible to fulfill the obligations under the contract, all of which were of a personal nature and depended upon the latter's character and reputation. Similarly, the Agreement sets forth the causes for immediate termination, which include a violation of law. The necessary legal consequence of this arrangement is that Domenech is required to perform his duties in good faith, and pursuant to the standards of propriety set forth in the services agreement, since the contract depends on his characteristics and abilities as a lobbyist. For the same reason, the term "cause" must necessarily include those attributable to him.

As stated before, Domenech was publicly implicated in serious criminal conduct. That implication is sufficient cause for termination under the Agreement. Therefore, the termination of the Agreement did not require advance notice. Since April 5, 2018, therefore, any right to the success fee was extinguished.

> **c.    As Politank's designated representative under the Agreement, Domenech's criminal and domestic abuse accusations constitute cause under civil contract law principles.**

The Agreement in the captioned case is a contract for the rendering of lobbying services in consideration of Domenech's attributes as such. When a service contract considers the qualities

and circumstances of the person providing the service, as in this case, the person contracting the service may not be compelled to receive the service from anyone else. Article 1115 of the Civil Code, 31 LPRA § 3165. For instance, when the service provider will not provide the service, the other party is entitled to resolve the contract and recover damages. *Garcia v. World Wide Entmt. Co*., 132 D.P.R. 378, 385 (1992).

The accusations leveled against Domenech and widely discussed in the press, tainted his reputation and undermined the qualities for which Defendants engaged him as a lobbyist, including his access. Moreover, in a time when there is such heightened awareness of the evils of gender violence, continued association with Domenech was an untenable business proposition. These considerations left Defendants no choice than to terminate the Agreement and constitute contractual "cause" for its termination.

Termination of the Agreement was also supported under the equitable principle of *rebuc sic stantibus*, as adopted by the Puerto Rico Supreme Court under Article 7 of the Puerto Rico Civil Code. 31 L.P.R.A. § 7. That principle tempers the binding nature of a contract when there occur circumstances that alter the basis upon which the parties became obligated. The doctrine has been applied when extraordinary and unforeseeable changes that occur after execution of a contract, make compliance extremely onerous for one of the parties. *BPPR v. Sucesion Talavera*, 174 D.P.R. 686, 706 (2008). In the captioned case, the purposes and objectives of the personal services agreement vanished along with Domenech's reputation. The imputations made against Domenech in public records and in the press are of such nature, that they destroyed the foundation on which a lobbying and representation agreement is premised. For Defendants to be required to continue a relationship with a lobbyist who lost the attributes for which he was engaged and

became associated with socially reprehensible conduct, would be disproportionately onerous to any service that Domenech could have provided thereafter.[9]

### d. Domenech's criminal and domestic abuse accusations deviate from the ethical and moral conduct that is expected from members of the legal profession, and also provides cause for termination of the Agreement.

As stated before, Politank correctly refers to itself in the Agreement as a government affairs law firm, and Domenech is an attorney admitted to practice law in Puerto Rico and before this Court. As such, Domenech is bound by the Puerto Rico Code of Ethical Rules. The Puerto Rico Supreme Court has held that its disciplinary functions extend over "[a]ny behavior manifested by the lawyer that disturbs his moral condition and, in that way, makes him unworthy of being a member and of representing this forum". *In re Rivera Herrans*, 195 D.P.R. 689 (2016). (The Supreme Court considered that aggravated assault reflect adversely on fitness to be a member of the bar.) It therefore, includes any conduct by the attorney including those outside the scope of his professional capacity.

Domenech's actions against his wife, as described in the criminal complaint and the Protective Order herein attached, clearly disturb his moral condition, and render him unfit to perform the obligations under the Agreement. Without a doubt, the Defendants, as his clients, exercised their right to terminate the contract for cause.

---

[9] The Defendants' concerns proved well founded. According to news reports, Resident Commissioner, Jennifer Gonzalez, whose access to is one of the objects of the lobbying contract, publicly distanced herself from Domenech. **Exhibits 4, 5, 10 and 11**. Likewise, the Democratic National Committee distanced itself from Domenech and, after accepting his resignation, stated that "[t]hese accusations of domestic violence are extremely worrisome and have no place in the Democratic Party". **Exhibits 18 and 19**. Other clients, such as the Puerto Rico College of Surgeons, also publicly announced the termination of their relationship with Domenech and his firm. **Exhibits 8 and 9**.

In conclusion, Defendants had both contractual cause and equitable cause for immediate termination of the Agreement. The result is that the Second Cause of Action must be dismissed, including its claims for fees during the termination period and the success fee. Furthermore, as attested by the terms of the termination letter herein (**Exhibit 3**), movants were left to learn of Domenech's arrest and probable cause determination and Protective Order from the press. Domenech breaches his duty to promptly and candidly communicate to its clients all matters that may affect their interests. See, Rule 19 of the Code of Professional Ethics.

Additionally, the controversy regarding the success fee is unripe, as discussed next.

      **2.**      **SUCCESS FEE CLAIM IS UNRIPE: This Honorable Court lacks subject matter jurisdiction to address Plaintiff's claim that it is entitled to the success fee. The matter is unripe, because the COFINA Group has not entered into a consensual plan of adjustment.**

In seeking a declaratory judgment regarding cause for termination, Plaintiff is trying to circumvent the fact that the success fee claim is unripe for adjudication.

The Complaint recognizes that the payment of the success fee is contingent upon the execution of a consensual plan for COFINA that limits the impairment of the face value of the bonds, or the achievement of a similar economic outcome through other means. (See Dkt. 1 ¶13). The success fee is based on the average trading value of the bonds as computed fifteen (15) days after the execution of said consensual plan. As of today, however, there is no "consensual plan", nor has the COFINA Group achieved a similar economic outcome otherwise. This means, in turn, that the success fee is neither liquid nor payable. Therefore, this controversy is not ripe for adjudication, and should be dismissed. See, *Texas v. U.S.*, 523 U.S. 296 (1998) ("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all'." Citing, *Thomas v. Union Carbide Agr. Products Co.*, 473 U.S. 568 (1985)).

The ripeness doctrine calls to determine whether a dispute has yet matured to a point that warrants decision. See, *Wright & Miller, Federal Practice & Procedure Juris*. §3532 (3d. ed.) See also, *Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) ("[R]ipeness doctrine] basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." (citations omitted)). The doctrine has roots in both the Article III case or controversy requirement and in prudential considerations. See *Mangual v. Rotger–Sabat*, 317 F.3d 45, 59 (1st Cir.2003).

There are two factors to consider in determining ripeness: 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.' *Id.* at 149, 87 S.Ct. 1507. Courts generally require both prongs to be satisfied for a claim to be considered ripe. *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 535 (1st Cir.1995). The fitness prong of the ripeness test has both jurisdictional and prudential components. The former, 'grounded in the prohibition against advisory opinions, is one of timing.' *Sindicato Puertorriqueño* [*de Trabajadores, SEIU Local 1996 v. Fortuno*], 699 F.3d [1] at 8 [(1st Cir.2012)] (quoting *Mangual*, 317 F.3d at 59) (internal quotation mark omitted). It concerns whether there is a sufficiently live case or controversy, at the time of the proceedings, to create jurisdiction in the federal courts. *Id.*

The prudential component asks 'whether resolution of the dispute should be postponed in the name of "judicial restraint from unnecessary decision of constitutional issues"; if elements of the case are uncertain, delay may see the dissipation of the legal dispute without need for decision.' *Mangual*, 317 F.3d at 59 (citation omitted) (quoting *Reg'l Rail Reorg. Act Cases*, 419 U.S. 102, 138, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974)); see also *Ernst & Young* [*v. Depositors Economic Protection Corp.*], 45 F.3d [530] at 535 [(1st Cir.1995)] ('This [fitness] branch of the test typically

17

involves subsidiary queries concerning finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed.').

The hardship prong, by contrast, is 'wholly prudential.' *Mangual*, 317 F.3d at 59. It looks at 'whether the challenged action creates a direct and immediate dilemma for the parties.' *Sindicato Puertorriqueño*, 699 F.3d at 9 (quoting *Verizon New Eng., Inc. v. Int'l Bhd. of Elec. Workers, Local No. 2322*, 651 F.3d 176, 188 (1st Cir.2011)) (internal quotation marks omitted). 'Generally, a "mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship."' *Id.* (quoting *Simmonds v. INS*, 326 F.3d 351, 360 (2d Cir.2003)).

If this analysis reveals that a claim is unripe, federal courts lack subject matter jurisdiction, and the complaint must be dismissed. See, *River City Capital, L.P. v. Bd. Of County*, 491 F.3d 301 (6th Cir. 2007).

As Plaintiff recognizes in the Complaint, the value and payment of the success fee is contingent on certain future events, none of which have materialized at present. In fact, there is uncertainty as to whether the events may occur as anticipated or if they will occur at all.

As explained earlier, all that exists as of today, is a PSA which requires the Oversight Board to submit to the T.III Court, a proposed consensual plan of adjustment by October 15, 2018, so that the court can approve it via a Confirmation Order. But confirmation is not pre-ordained since affected parties may object and their positions need to be considered. If confirmation occurs the plan would be effective ten (10) days after all conditions approved in the Confirmation Order are met. This means that the conditions precedent to the success fee have not yet materialized and there is no certainty that they ever will. It also means that it is uncertain, even unlikely, that they

18

will materialize before the success fee term expires, which by the language of Sec. 5.3 of the Agreement, happens automatically six months after termination[10] without cause.[11]

Because Plaintiff's claims related to the collection of the success fee are unripe the court should refrain from issuing the requested declaratory judgment.

> **D.   THIRD CAUSE OF ACTION: THE ALLEGATIONS REGARDING LIBEL AND SLANDER ARE INSUFFICIENT TO ESTABLISH ACTUAL MALICE, HARM, OR A CAUSAL CONNECTION BETWEEN DEFENDANTS' CONDUCT AND ANY REPUTATIONAL HARM. THESE ALLEGATIONS, THUS, DO NOT STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

The Complaint alleges that Defendants "informed other third parties and their representatives – including holders of bonds…" (1) that Defendants' contract with Politank was terminated for cause, "because Politank incurred in a violation of law" (**Dkt. 1 ¶ 57**); and (2) "that Politank was breaching the Rules of Professional Conduct of Puerto Rico for attempting to collect on the invoices issued for the 60-day termination period." **Dkt. 1 ¶ 58**. The Complaint alleges that Defendants made these comments "with full knowledge of their falsehood" (**Dkt. 1 ¶¶ 59-60**), which comments harmed Politank's reputation with "other clients", causing them to cancel their consulting contracts. **Dkt. 1 ¶¶ 66-67**.

A defamation and libel cause of action has three (3) separate potential sources under Puerto Rico law: (a) Article II § 8 of the Commonwealth Constitution; (b) the Libel and Slander Act of 1902, 32 L.P.R.A. § 3141 et seq.; and (c) Article 1802 of Puerto Rico's Civil Code, 31 L.P.R.A. §

---

[10] According to ¶ 18 of the Complaint, "[o]n April 5, 2018, Mr. Kirpalani notified Politank of the termination for cause of the Agreement". Consequently, the period of six months started on April 5, 2018, since termination of the Agreement becomes effective after delivery of written notification to the other party. Exhibit 1, Agreement § 9.1 ("Termination of this Agreement may only be accomplished by delivering a written notification to the other party's representative. This notice of termination will be effective upon receipt of such notice by the party's representative."). This period will on October 5, 2018.
[11] Again, the Defendants assert there was cause for termination, but argue that the case must be dismissed even absent such cause.

5141. *Aponte v. Calderon*, 284 F.3d 184, 197 (1st Cir. 2002). "In interpreting these various sources of law, the Puerto Rico Supreme Court has explicitly said that Puerto Rico law on libel and slander follows the common law tradition." *Id.* Therefore, "a private plaintiff asserting a defamation claim against a private defendant must show that the defendant (1) made a false statement, (2) in a negligent manner, (3) causing actual damage to the plaintiff." *Baltodano v. Merk, Sharp & Dohme (I.A.) Corp.*, 637 F.3d 38, 43 (1st Cir. 2011). The second element changes in cases involving public figures. In these, "the plaintiff must also show that the information was published with actual malice or with knowledge of its falsity or with reckless disregard of whether it was false or not." *Villanueva v. Hernández Class*, 128 D.P.R. 618, 642, 28 P.R. Offic. Trans. 618 (1991).

      1.    **The Complaint fails to plead facts sufficient to establish the element of malice.**

The Complaint fails to plead facts sufficient to establish the element of malice. The Complaint tacitly recognizes that Domenech is a public figure, by pleading actual malice. **Dkt. 1 ¶¶ 60 and 64**. We agree and adopt the standard in this discussion.[12] The Complaint alleges that Defendants made the alleged statements with "malice" in "full knowledge of their falsehood**"**. **Dkt. 1 ¶¶ 60 and 64**. Actual malice cannot be presumed, however. The Plaintiff must provide clear and convincing evidence that the defendant entertained serious doubts as to the truth of his publication. *Villanueva v. Hernández Class*, *supra*, p. 643. The Complaint, however, pleads no facts from which these conclusory allegations of malice can be deemed plausible. Such conclusory allegations about "ill-will" and "actual malice," devoid of factual assertions that in any way lend

---

[12] Domenech was Hillary Clinton's Deputy State Coordinator for her 2008 democratic primary in Puerto Rico and served as campaign manager for Jenniffer González bid to become Puerto Rico's Resident Commissioner. **See Exhibit 22.** See *Garib Bazain v. Clavell*, 135 D.P.R. 475, 498 (1994). Therefore, as recognized in the Complaint, Plaintiff must prove actual malice. *Villanueva v. Hernández Class*, *supra*.

them plausibility, renders the allegations insufficient to withstand a motion to dismiss. *Shay v. Walters*, 702 F.3d 76, 82 (1st Cir. 2012).

> **2.     The Complaint fails to plead facts sufficient to establish the elements of causation and actual harm.**

Though the Complaint claims that the statements damaged Plaintiff's reputation (**Dkt. ¶ 66**), it fails to establish that Domenech or Politank had any reputation to salvage after the widespread coverage of Domenech's domestic abuse that began on April 5, 2018.[13] That is, the Complaint fails to establish that it was Defendants who caused Politank any harm, or that Politank had any reputation to protect in the first place.

Though the Complaint is disingenuously drafted to ignore the obvious, the court may take judicial notice of the proverbial elephant in the room: the fact that Domenech's reputation was tarnished by his own acts which would have eventually surfaced, and the fact that it was widely reported that he was arrested on charges of domestic violence and that an *ex parte* Protective Order was obtained against him by his wife. The Defendants did not accuse nor arrest Domenech. Neither did they publish these devastating stories about his actions; the police and media did. This conduct by others, which is not attributable to Defendants, is the cause that harmed Domenech's reputation beyond repair and then Politank's, by association. If anything, the actions of the police and the press, are the direct cause of the harm claimed in this action by Politank. This also means that whatever Defendants did in response to these press reports, occurred ***after*** Politank had no reputation to protect, and therefore no harm could have come to it from any conduct imputable to Defendants.

> **3.     The Complaint alleges facts insufficient to establish that informing others that Politank was in breach of the Rules of Professional Conduct**

---

[13] For example, on April 6, 2018, Politico published a story indicating that Domenech was pressured by local and national Democrats to resign to his position in the Democratic National Committee. **Exhibit 22**.

**of Puerto Rico for attempting to collect the invoices issued for the 60-day termination period, constituted defamation.**

The Complaint alleges that Defendants incurred in defamation by communicating their opinion regarding Politank's effort to collect certain invoices. It alleges that said opinion was false and that Defendants were aware that no rules of professional conduct apply to corporations such as Politank. What Plaintiff presents as a defamatory statement, however, is nothing more than an opinion. It is well established that, because the truth or falsity of an opinion is difficult, if not impossible, to prove, they cannot be deemed defamatory. *Segarra Jimenez v. Banco Popular, Inc.*, 421 F.Supp.2d 452, 459 (D.P.R. 2006); referencing *Garib Bazain v. Clavell*, *supra*.

**E.   FOURTH CAUSE OF ACTION: THE ALLEGATIONS REGARDING TORTIOUS INTERFERENCE ARE INSUFFICIENT TO IMPOSE LIABILITY ON DEFENDANTS. THEREFORE, THE FOURTH CAUSE OF ACTION SHOULD BE DISMISSED.**

The Complaint alleges that Defendants tortuously interfered with Politank's "consulting contracts with other holders of bonds..." **Dkt. 1 ¶¶ 22-25 and 69-76**. Plaintiff claims that Defendants had knowledge of these consulting contracts and communicated with Politank's clients to disparage it, which in turn compelled the clients to cancel their contracts. **Dkt. 1 ¶¶ 70 and 71**.

These allegations are but a rehash of the Complaint's Third Cause of Action for Libel and Slander. Because, as the Complaint concedes, the standard of liability that applies to said claim in this case requires proof of malice, the Complaint cannot now dilute said standard by re-pleading the facts as a tortious interference claim under Article 1802, *supra*, particularly because said standard is required to protect the constitutional right to freedom of expression. For the sake of argument, however, we address the tortious interference claim below.

Article 1802 of the Puerto Rico Civil Code, *supra*, establishes a cause of action for tortious interference with contractual relations. *MMB Development Group, Ltd. v. Westernbank Puerto Rico*, 762 F.Supp.2d 356, 370 (D.P.R. 2010) "to establish a claim of tortious interference with

contractual relations, a party must show (1) that there exists a contract with which a tortfeasor interferes; (2) that the tortfeasor acted intentionally, with knowledge of the contract; (3) that Plaintiff suffered damages as a result of the breach and; (4) that Plaintiff's damages were caused by the tortfeasor's acts." *Id.*; citing *Dolphin v. Ryder*, 127 D.P.R. 869, 879 (1991); *Gen. Office Prods. v. A.M. Capen's*, 115 D.P.R. 553, 558–559, 15 P.R. Offic. Trans. 727 (P.R. 1984).

Regarding the first element of the tortious interference claim, the existence of a contract, Puerto Rico's Supreme Court has ruled that "a fixed time period in the contract is essential". *Alpha Biomedical and Diagnostic Corp. v. Philips Medical Systems Netherland BV*, 828 F.Supp.2d 425, 430 (D.P.R. 2011). See also, *A.M. Capen's Co., Inc. v. Am. Trading & Prod. Corp.*, 200 F.Supp.2d 34, 43 (D.P.R. 2002) ("[F]or fundamental constitutional and strong public policy reasons, there can be no tortious interference when the contract at issue has no expiration date and is terminable at will.")

Regarding the second element, this District Court has held that mere knowledge of the existence of a contractual relation does not equate fault. That is, "to be liable, a defendant must have 'acted tortiously, with knowledge of the contract's existence.'" *New Comm Wireless Services, Inc. v. SprintCom, Inc.*, 287 F.3d 1, 10 (1st Cir. 2002); citing *Gen. Office Prods. v. A.M. Capen's*, *supra*, 734. To meet the second element, "the plaintiff must show that the defendant intended to interfere with the contract, knowing that this interference would cause injury to the plaintiff." *Id.*

However, the Complaint fails to state a claim of tortious interference. First, the Complaint does not identify: (1) any specific cancelled contract, much less a contract of specified duration; (2) any specific client who canceled its contract; (3) how Defendants disparaged Politank to provoke said cancellation; nor (4) what were Defendants' statements that caused these unnamed clients to cancel their contracts. Moreover, the Complaint is equivocal as to how many of

Politank's clients canceled their contract; sometimes claiming in the plural form that Defendants have caused other clients to cancel their contracts (**Dkt. 1 ¶ 67**), and others in the singular form that a client canceled a contract (**Dkt. 1 ¶¶ 72-73**). Clearly, Politank's complaint is nothing more than an unadorned, "the-defendant-unlawfully-harmed-me" accusation whose factual allegations are insufficient to withstand a motion to dismiss. *Ashcroft v. Iqbal*, *supra*, 678.[14]

Second, Politank's tortious interference claim also fails because it does not specify if the unidentified canceled contract to which it refers in ¶ 72 was for a fixed term or if the contract was not otherwise terminable at will. *Alpha Biomedical and Diagnostic Corp. v. Philips Medical Systems Netherland BV*, *supra*, 430-431 (Dismissing tortious interference claim because the complaint does not "specify a fixed termination date for its verbal agreement or that the agreement was not terminable at will.").

Finally, the tortious interference claim fails because the Complaint does not allege that the purpose of any Defendants' alleged communications with these other unnamed clients was to harm Politank. *New Comm Wireless Services, Inc. v. SprintCom, Inc.*, *supra*, 10. As we discussed earlier, the mere allegation that Defendants knew about Politank's contractual relations with its other clients is not enough to show they acted intentionally to interfere. *MMB Development Group, Ltd. v. Westernbank Puerto Rico*, *supra*, 370.

    **F.**    **THE FIRST CAUSE OF ACTION: SHOULD BE DISMISSED: DEFENDANTS WILL DEPOSIT WITH THE COURT THE OUTSTANDING FEES**

---

[14] "As the Court held in [*Bell Atlantic Corp. v.*] *Twombly*, 550 U.S. 544 [(2007)], the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, *supra*, 678.

The First Cause of Action is a collection of monies claim for the amount of $170,822.08 for services rendered. The Defendants have begun to take steps to deposit in Court the monies claimed as outstanding fees.

While we are aware that the Court cannot dismiss this first claim until the monies are deposited, we address it here so as to not deem this defense of payment by deposit as waived.

## V.   CONCLUSION

Defendants had cause to terminate the Agreement with Politank. This "cause" preempts the declaratory judgment requested in the Second Cause of Action and requires dismissal of the libel and slander claim raised in the Third Cause of Action. This is because the "cause" in this case leaves Politank with no reputation to protect. It therefore suffered no harm, and any harm was caused by someone else, denying the elements of damage and causation. The tortious interference claim of the Fourth Cause of Action is based on the same facts as the libel and slander claim and falls for the same reasons.

If the above were not enough to dismiss the Third and Fourth Causes of action entirely, the fact that no individualized allegations are made against the members of the COFINA Senior Group requires the dismissal of said claims against them.

Finally, Defendants are in the process of facilitating the deposit of the amounts claimed in the First Cause of Action. Upon deposit, they will request its dismissal as well.

**WHEREFORE** Defendants respectfully request that this Honorable Court Dismiss the Second, Third and Fourth Causes of Action, and allow Defendants until next Friday, September 14, to deposit the amounts claimed in the First Cause of Action, to decree its dismissal then.

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing complies with the form and length requirements of Local Rule 7(d) of the Local Rules of the United States District Court for the District of Puerto Rico because it has been prepared in a proportionally spaced 12 point Times New Roman font.

CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2018, I electronically filed the foregoing with the Clerk of this Court using the CM/ECF System, which will send notice of such filing to all counsel of record.

Dated: September 7, 2018

Respectfully submitted,

REICHARD & ESCALERA, LLC
255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, PR 00917-1913
Telephone: (787) 777-8888

*s/Rafael Escalera Rodríguez*
Rafael Escalera Rodríguez
USDC-PR No. 122609
escalera@reichardescalera.com

*s/Sylvia M. Arizmendi*
Sylvia M. Arizmendi
USDC-PR No. 210714
ArizmendiS@reichardescalera.com

*s/Alana M. Vizcarrondo-Santana*
Alana M. Vizcarrondo-Santana
USDC-PR No. 301614
vizcarrondo@reichardescalera.com

*s/Gustavo A. Pabón-Rico*
Gustavo A. Pabón-Rico
USDC-PR No. 231207
pabong@reichardescalera.com