UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| POLITANK, CORP.<br><br>    Plaintiff<br><br>            v.<br><br>ARISTEIA CAPITAL LLC; THE BAUPOST GROUP LLC, CANYON CAPITAL ADVISORS LLC, GOLDENTREE ASSET MANAGEMENT LP, SCOGGIN CAPITAL MANAGEMENT LLC, TACONIC CAPITAL ADVISORS LP, TILDEN PARK CAPITAL MANAGEMENT LP, WHITEBOX ADVISORS LLC, and SUSHEEL KIRPALANI<br><br>    Defendants. | Case no.: 18cv01439 (JAG) |

## **FIRST AMENDED COMPLAINT**

TO THE HONORABLE COURT:

NOW COMES Plaintiff POLITANK, CORP., though the undersigned attorneys, and respectfully states and prays as follows:

**I.**
**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 since:

a.      The matter in controversy in this action exceeds $75,000.00, exclusive of interest and costs, and

b.      This action is between citizens of different States or citizens of a State and citizens or subjects of a foreign state, whereas none of the members or partners of the Defendants is domiciled in Puerto Rico and they are all citizens of either a State or a foreign country.

2.    It also has jurisdiction pursuant to 28 U.S.C. § 1367 as any claims over which the Court lacks original jurisdiction under 28 U.S.C. § 1332 are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(3), since all the Defendants are subject to the Court's personal jurisdiction with respect to the claims raised herein.

## II.
## PARTIES

4.    Plaintiff POLITANK, CORP. is a corporation established pursuant to the laws of the Commonwealth of Puerto Rico, with principal offices located in 1225 Juan Ponce de Leon Avenue., VIG Tower Suite 1401-02, San Juan, Puerto Rico 00907. Politank is a government affairs law firm which, among other things, provides consulting services to holders of bonds issued by the Commonwealth of Puerto Rico and its public corporations.

5.    Collectively, Defendants COFINA SENIOR BONDHOLDER GROUP are hedge funds who hold bonds issued by the PUERTO RICO URGENT INTEREST FUND CORPORATION ("COFINA"). For purposes of this complaint, the COFINA Senior Bondholder Group are:

a.    ARISTEIA CAPITAL LLC, a Delaware limited liability corporation with principal offices located at One Greenwich Plaza, 3rd Floor, Greenwich, Connecticut 06830.

b.    THE BAUPOST GROUP LLC, a Delaware limited liability corporation with principal offices located at 10 St. James Avenue, Suite 1700, Boston, Massachusetts 02116.

2

c. CANYON CAPITAL ADVISORS LLC, a Delaware limited liability corporation with principal offices located at 2000 Avenue of the Stars, 11th Floor, Los Angeles, California 90067.

d. GOLDENTREE ASSET MANAGEMENT LP, a Delaware limited partnership with principal offices located at 300 Park Avenue, 21st Floor, New York, New York 10022.

e. SCOGGIN CAPITAL MANAGEMENT LLC, a Delaware limited liability corporation with principal offices located at 660 Madison Avenue, New York, New York 10021-8405.

f. TACONIC CAPITAL ADVISORS LP, a Delaware limited liability partnership with offices located at 280 Park Avenue, 5th Floor, New York, New York 10017.

g. TILDEN PARK CAPITAL MANAGEMENT LP, a Delaware limited partnership with principal offices located at 452 Fifth Avenue, 28th Floor, New York, New York 10018.

h. WHITEBOX ADVISORS LLC, a Delaware limited liability corporation with principal place of business located at 3033 Excelsior Blvd. #300, Minneapolis, Minnesota 55416.

6. Defendant SUSHEEL KIRPALANI is a partner at QUINN EMANUEL URQUART & SULLIVAN LLP ("Quinn Emanuel"), with offices located at 51 Madison Avenue, 22nd Floor, New York, New York 10010. Upon information and belief, Mr. Kirpalani is a resident of the State of New York. Mr. Kirpalani is the COFINA Bondholder's main attorney within Quinn Emanuel.

### III.
### FACTS

7. On October 20, 2015, Politank and Quinn Emanuel executed an *Agreement for Consulting Services*. This *Agreement for Consulting Services* was amended, effective May 1, 2017, pursuant to a *First Amendment to Agreement for Consulting Services*. The *Agreement for*

*Consulting Services*, together with the *First Amendment to Agreement for Consulting Services* are hereinafter referred to as the "Agreement".

8.      The initial term of the Agreement was for one year, from September 17, 2015 through September 17, 2016, automatically renewed for an additional term of one year, unless terminated by either party.

9.      It was agreed that the Agreement would be governed by the laws of the Commonwealth of Puerto Rico.

10.      Pursuant to this Agreement, Politank was to advise Quinn Emanuel on legislation that directly affected Quinn Emanuel's interest as a representative of the COFINA Senior Bondholder Group and to lobby the various levels of the Puerto Rico Government on reaching a consensual plan for COFINA debt payment.

11.      Attorney Francisco J. Domenech was designated in the Agreement as the CONSULTANT'S REPRESENTATIVE.

a.      Prior to its execution, the parties to the Agreement discussed that, while Attorney Domenech would serve as Quinn Emanuel's main point of contact at Politank, all of Politank's resources would provide advice and government relations functions to Quinn Emanuel.

b.      In effect, all of Politank's employees provided advice and government relations functions to Quinn Emanuel during the term of the Agreement.

12.      In exchange for these services, the COFINA Senior Bondholder Group were to pay Politank, during the term of the Agreement, the amount of $55,000.00 a month, which were due and payable upon receipt of the invoice. This compensation was not contingent upon the success of any undertaking under the Agreement.

13.    The parties agreed to the following payment terms:

5.7    ***The CONSULTANT shall issue monthly invoices, which shall be due and payable upon their receipt by the CLIENT.*** Invoices may include expenses incurred during previous months. If any invoice remains outstanding for more than fifteen (15) days after it has become due and payable, the CONSULTANT may cease providing the services contracted for under this AGREEMENT until such time as payment is received. In such case, the COFINA GROUP and the CLIENT shall be solely responsible for any adverse effects that the CONSULTANT'S decision to cease providing the services may have upon the furtherance of the GOALS AND OBJECTIVES. Notwithstanding anything else in this Section 5.6, the CONSULTANT shall not cease providing any services under this AGREEMENT until the CONSULTANT has notified the CLIENT of the failure to timely pay any invoice, and has provided the CLIENT with fifteen (15) days to cure such non-payment. Notwithstanding anything else in this Section 5.6, the CONSULTANT shall not cease providing any services under this AGREEMENT as a result of the COFINA GROUP'S failure to pay any invoiced amounts which are reasonably disputed, as long as the invoiced amounts not in dispute are paid in full as they are due and the dispute is not related to the monthly retainer. (Emphasis added).

14.    The Agreement also provided for a success fee under the following terms:

5.2    If the CLIENT or the COFINA GROUP enters into a consensual plan for COFINA that limited the impairment of the face value of the bonds, or the COFINA GROUP achieves a similar economic outcome through a means other than a consensual plan, the COFINA GROUP will pay to the CONSULTANT a success fee based on [the Recovery Value[1] of the Senior COFINA bonds] as follows:

| Recovery Value | Success Fee |
|---|---|
| ≥ 95% | $3,000,000.00 |
| 92.5% | $2,500,000.00 |
| 90% | $1,275,000.00 |
| 87.5% | $750,000.00 |

---

[1]    The *Recovery Value* of a given Senior COFINA Bond was defined as the "mean the average value at which such Senior COFINA Bond (or any bond received in exchange for such Senior COFINA Bond) trades fifteen (15) days after the execution of any consensual plan or of such any other means which achieve a similar economic outcome, divided by the average accreted value of such Senior COFINA bond as of the same date."

5

| 85% | $500,000.00 |
|---|---|
| 82.5% | $250,000.00 |
| <82.5% | --- |

[…]

The success fee will be due and payable to the CONSULTANT within thirty (30) days of the execution of any consensual plan or such any other means which achieve a similar economic outcome.

If on/or before May 31, 2018, the CONSULTANT becomes entitled to the payment of a success fee, as set forth above, the CONSULTANT'S success fee shall be increased by an additional TWENTY PERCENT (20%) of the otherwise payable success fee.

15.    The Agreement provided that, after the expiration of the first year, it could be terminated for any reason whatsoever, by giving at least 60-days' written notice to the other party.

16.    The Agreement could also be terminated immediately, for cause, which was defined as a violation of law, rule or regulation, or a breach of Articles 6 (regarding "Confidentiality"), 11.5 (regarding illegal activity by Politank, or causing Quinn Emanuel or the COFINA Senior Bondholder Group to engage in illegal activity)[2] or 11.6 (regarding bribery of a public official)[3] of the Agreement.

---

[2]    The Agreement provides as follows:

> 11.5. [Politank] confirms that in carrying out its duties and responsibilities under this agreement, it will neither undertake nor cause to be undertaken any activity which either (i) is illegal under the laws, decrees, rules or regulations in effect in either the United States, Puerto Rico or any applicable countries; or (ii) would have the effect of causing [Quinn Emanuel] or any member of the COFINA [Bondholders] to violate any laws, decrees, rules or regulations in effect in either the United States, Puerto Rico or any applicable countries, including, but not limited to, anti- corruption laws, including the US Foreign Corrupt Practices Act or anti- boycott laws and regulations.

[3]    The Agreement provides as follows:

> 11.6. With respect to or in connection with the services contemplated under this agreement, [Politank] represents and warrants to the [Quinn Emanuel] that none of Politank, its directors or employees will make or authorize or promise to make or authorize any offer, payment or gift of money or anything of significant

6

17.     When the parties negotiated the Agreement, an act or failure to act that could subject Quinn Emanuel or the COFINA Senior Bondholder Group to reputational risk was specifically removed from the definition of cause for the termination of the Agreement.

18.     If the Agreement was terminated, it was agreed that Politank would be entitled to payment for services rendered through the effective date of the termination, as well as the success fee, if it accrued within six months of the date of termination.

19.     However, if the termination was for cause, the COFINA Senior Bondholder Group would not be bound to pay Politank any success fee.

20.     On April 5, 2018, Mr. Kirpalani notified Politank of the termination for cause of the Agreement. This letter was received by Politank by certified mail on April 10, 2018.

21.     Nevertheless, Politank had not incurred in any violation of law, rule or regulation, in any illegal activity or bribery nor did it breach the confidentiality provisions of the Agreement, all of which could be considered cause for immediate termination under the Agreement.

22.     On April 6, 2018, Mr. Kirpalani reiterated to Politank "the decision to terminate with and/or without cause" the Agreement. This letter was received by Politank by certified mail on April 10, 2018.

23.     On April 13, 2018, Mr. Kirpalani wrote to Politank rejecting the validity of the invoices issued to cover the 60-day termination period, claiming that it would be a breach of the Rules of Professional Conduct of Puerto Rico for Politank to attempt to collect on these.

---

value to any employee, public official or other person or entity employed by the government, public agency or public enterprise of any country or public international organization or any other person, to whom such offer, payment or gift of money or anything of value is prohibited by any applicable law of any applicable country, in order to obtain or retain business or any other improper advantage for [Quinn Emanuel] or the members of the COFINA [Bondholders]..

24. In April 2018, before and after the notification of the termination, the Defendants communicated among themselves and with third parties and their representatives — including holders of bonds issued by the Commonwealth of Puerto Rico and its instrumentalities— that Politank had incurred in conduct which, under the Agreement, constituted cause to terminate the same.

25. The Defendants also communicated among themselves and with third parties and their representatives — including holders of bonds issued by the Commonwealth of Puerto Rico and its instrumentalities— that any attempt of Politank to collect on invoices for the 60-day termination period would constitute a breach of the Rules of Professional Conduct of Puerto Rico.

26. In April 2018, Mr. Kirpalani actively sought out other clients of Politank and their legal representatives— including holders of bonds issued by the Commonwealth of Puerto Rico and its instrumentalities— in order to convince them to cancel their contracts with Politank and told them that Politank had incurred in conduct which, under the Agreement, constituted cause to terminate the same and that it had committed unethical conduct under the Rules of Professional Conduct of Puerto Rico.

27. As a result of these communications, other holders of bonds issued by the Commonwealth of Puerto Rico and its instrumentalities who were clients of Politank at that time cancelled their contracts.

28. These other clients specifically informed Politank that their decision was based on the communications had with the COFINA Senior Bondholder Group and their attorneys with respect to Politank's termination.

29.    As of the date that Mr. Kirpalani notified the termination, the following invoices issued by Politank were outstanding and/or had open balances:

| Invoice no. | Date Due | Open Balance |
|---|---|---|
| 036-2017-12 | 11/21/17 | $ 2,082.08 |
| 036-2018-01 | 12/26/17 | $ 10,238.80 |
| 036-2018-02 | 1/25/18 | $ 44,101.20 |
| 036-2018-03 | 2/21/18 | $ 57,200.00 |
| 036-2018-04 | 3/21/18 | $ 57,200.00 |
| | **TOTAL** | **$170,822.08** |

30.    On April 18, 2018, Politank sent the Defendants a letter demanding payment of the open balances on the aforementioned invoices.

31.    Politank reached out to the members of the COFINA Senior Bondholder Group in an attempt to obtain payment of these open balances and avoid litigation.

32.    To date, no payment has been received by Politank on these invoices.

33.    Moreover, no payment has been received on the invoices issued to cover the 60-day termination period.

34.    On June 5, 2018, court-appointed representatives for the COMMONWEALTH OF PUERTO RICO and for COFINA announced an agreement in principle (the "Term Sheet") to resolve the controversy as to the respective ownership interests in the sales-and-use tax ("IVU") revenue pledged as collateral for the COFINA bonds.[4]

35.    Under the Term Sheet, COFINA would receive (a) 53.65% of the yearly scheduled amount to be received by COFINA, beginning on July 1, 2018 and (b) all of the cash held in trust at Bank of New York Mellon, as of June 30, 2018 (approximately $1.2 billion). The Commonwealth would receive the remaining funds received by COFINA.

---

[4]    *See In re: Fin. Oversight and Mgmt. Bd. for P.R (as a rep. of Commonwealth of P.R.),* Case no. 17-bk-3283 (LTS), before the U.S. District Court for the District of P.R. (Docket 486, *Joint Informative Motion of Commonwealth Agent and COFINA Agent Disclosing Agreement in Principle*).

36.     Legal representatives of the COFINA Senior Bondholder Group publicly stated that the recovery value under the Term Sheet far exceeds the value at which the COFINA bonds had been trading.

37.     At the time such representation was made, the COFINA Senior bonds held by the COFINA Senior Bondholder Group were trading, in the aggregate, for more than 82.5% of their face value.

38.     After the announcement of the Term Sheet, the FEDERAL OVERSIGHT AND MANAGEMENT BOARD (the "Oversight Board") and the P.R. FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY ("AAFAF") began negotiating the terms of a COFINA Plan of Adjustment with certain key COFINA creditor constituencies, including the COFINA Senior Bondholder Group.

    a.     The *COFINA Plan of Adjustment* is the plan of adjustment to be filed, and was in fact filed, by the Oversight Board in the Title III Case incorporating the terms and provisions of the Plan Support Agreement and the Term Sheet.

39.     On August 8, 2018, the Oversight Board, the Commonwealth, and a substantial number of the COFINA bondholders— including the COFINA Senior Bondholder Group— reached an agreement to restructure COFINA's outstanding bond debt (the "August Agreement"), incorporating the terms of the Term Sheet.

40.     Representatives of the COFINA Senior Bondholder Group who participated in the negotiations publicly stated that

    a.     the August Agreement was more than just an agreement in principle;

    b.     it was supported by 70% of the senior COFINA bondholders;

    c.     the agreements included in the August Agreement would continue unchanged because of the support of a large percentage of the senior COFINA bondholders

d.      under the August Agreement, the holders of senior COFINA bonds would recover about 93% of their investment; and,

e.      the new COFINA bonds to be issued for the bond exchange were equal or better than the current ones in terms of collateral and investment-grade criteria.

41.     On August 29, 2018, the COFINA Senior Bondholder Group entered into an agreement with other parties— including the Oversight Board, COFINA, and AAFAF— to support the restructuring of COFINA under the terms specified therein and the documents attached thereto (the "Original Plan Support Agreement").[5]

42.     The Original Plan Support Agreement incorporated the terms of the Term Sheet and reduced into writing the agreements reached in the August Agreement.

43.     The Original Plan Support Agreement outlined the formal conditions and terms for COFINA's restructuring.

44.     The material terms of the Original Plan Support Agreement were as follows:

a.      *Filing of Plan of Adjustment*. The Oversight Board bound itself to file the COFINA Plan of Adjustment (based upon the terms and conditions described in the Original Plan Support Agreement and Term Sheet).[6]

b.      *Support for the COFINA Plan of Adjustment*.

        i.      The parties agreed to support the Plan of Adjustment and, subject to receipt of the Disclosure Statement and other materials

---

[5]     *See Plan Support Agreement* dated August 29, 2018.

[6]     Original Plan Support Agreement at p. 17, §. 4.1(a); *Amended and Restated Plan Support Agreement* dated September 20, 2018 ("Plan Support Agreement"), p. 15, §4.1(a).

11

concerning the Plan of Adjustment, to vote to accept the Plan of Adjustment.[7]

ii.      The *Disclosure Statement* is the disclosure statement filed with respect to the Plan by the Oversight Board in the Title III Case, in accordance with section 1125 of the Bankruptcy Code, which was to be in form and substance reasonably satisfactory to the parties to the agreement.

c.      *Confirmation Order*:

i.      The *Confirmation Order* is the order of the Title III Court confirming the Plan, in accordance with Section 314 of PROMESA and section 1129 of the Bankruptcy Code, which was to be in form and substance reasonably satisfactory to the parties to the agreement.

ii.      The parties agreed that the order confirming the Plan would provide, among other things, that: (i) the new COFINA bonds and the covenants provided by COFINA and the Commonwealth (discussed below) are valid, binding, legal and enforceable obligations under Puerto Rico and federal law, and (ii) the portion of the IVU pledged to COFINA is property of COFINA, transferred free and clear of all liens, claims, and encumbrances, and is not "available resources" of the Commonwealth within the meaning of such term under the Puerto Rico Constitution.[8]

---

[7]   Original Plan Support Agreement at p. 20, § 4.4(c); p. 22, § 4.5(c); p. 24, §4.6(c); p. 25, § 4.7(c); p. 27, §§ 4.8(b), 4.9(a); p. 29, §. 5.1; Plan Support Agreement, at p. 18, § 4.4(c); p. 20, § 4.5(c); p. 22, § 4.6(c); p. 24, § 4.7(c); p. 25, § 4.8(b); p. 26, § 4.9(a); p. 28, § 5.1.

[8]   Original Plan Support Agreement at p. 93, Term Sheet, Section H; Plan Support Agreement at p. 93, Term Sheet, Section H.

d.      *Fees*. Creditors who were parties to the Original Plan Support Agreement prior to a specified date would receive, subject to certain exceptions, a *pro rata* share of additional cash estimated at $332 million.[9]

i.      This additional cash will come from the Commonwealth's portion of the IVU, not from the portion used to fund COFINA.

ii.     The purpose of the cash is to compensate the parties for the cost of the attorneys, consultants, lobbyists, financial advisor fees and other costs associated with the litigation, negotiation, confirmation and consummation of the Term Sheet, the August Agreement, and the Plan Support Agreement, and in consideration of the execution and delivery of the agreement and the obligations and covenants contained therein.

iii.    Even the fees paid for Politank's lobbying services would be reimbursed to the COFINA Senior Bondholder Group from this additional cash.

iv.     At the end of the day, the members of the COFINA Senior Bondholder Group reaped a very substantial benefit from the "reimbursement" of their costs (to be paid from the Commonwealth's pockets) as well as the rewards from buying bonds for cents on the dollar and getting par value back in return. All of this, again, paid for by the People of Puerto Rico.

e.      *Issuance of COFINA Bonds*.

---

[9]     Original Plan Support Agreement, at p. 72, Term Sheet, Section O; Plan Support Agreement at p. 97, Term Sheet, Section O.

   i.  Under a COFINA Plan of Adjustment, senior and subordinate COFINA bondholders would receive new senior lien bonds (the "new COFINA bonds") secured by a statutory lien on 53.65% of the proceeds of the portion of the sales tax.[10]

   ii.  These new COFINA bonds would be subject to the following conditions:

     1.  *Debt Service Reserve Fund.* The new COFINA bonds would not have a debt service reserve fund.[11]

     2.  *Acceleration.* The new COFINA bonds would not have any rights of acceleration.[12]

     3.  *Sales and Use Covenant.* The Commonwealth pledged that the rate of the IVU from which COFINA would be funded would not be reduced below 5.5%, unless certain specific conditions were met.[13]

     4.  *Non-Impairment*: The Commonwealth pledged that it would take no action that would (i) impair COFINA's right to receive its portion of the IVU, (ii) limit or alter the rights vested in COFINA in accordance with the COFINA Plan and the order

---

[10] Original Plan Support Agreement, at p. 72, Term Sheet, Section E; Plan Support Agreement at p. 85, Term Sheet, Section E.

[11] Original Plan Support Agreement, at p. 87, Term Sheet, Section E.6; Plan Support Agreement at p. 87, Term Sheet, Section E.6.

[12] Original Plan Support Agreement, at p. 87, Term Sheet, Section E.8; Plan Support Agreement at p. 88, Term Sheet, Section E.8.

[13] Original Plan Support Agreement, at p. 87, Term Sheet, Section E.9.a; Plan Support Agreement at p. 88, Section E.9.a.

confirming the COFINA Plan to fulfill the terms of any agreements with the holders of new COFINA bonds, (iii) materially adversely impair the collection of the IVU pledged to COFINA in any fiscal year or (iv) impair the rights and remedies of the holders of the new COFINA bonds or the collateral security thereof.[14]

5.   *Tax-Exempt*: COFINA pledged that it will do and perform all acts and things permitted by law and "reasonably necessary or desirable" to assure that interest paid to the holders of any tax-exempt new COFINA bonds will remain excludable from gross income for federal income tax purposes.[15]

6.   *Rating Agency Covenant*: COFINA pledged to use its reasonable best efforts and work in good faith to obtain the best rating possible on the outstanding new COFINA bonds.[16]

f.   *Substitution of Collateral*: The Commonwealth may enact legislation that permits a Commonwealth revenue stream to replace the portion of the IVU pledged to COFINA (the "New Collateral") as security for the repayment of the new COFINA bonds only under the circumstances set forth in the agreement.[17]

---

[14] Original Plan Support Agreement, at p. 87, Term Sheet, Section E.9.b; Plan Support Agreement at p. 89, Term Sheet, Section E.9.b.

[15] Original Plan Support Agreement, at p. 88, Term Sheet, Section E.9.c; Plan Support Agreement at p. 89, Term Sheet, Section E.9.c.

[16] Original Plan Support Agreement, at p. 88, Term Sheet, Section E.9.d; Plan Support Agreement at p. 89, Term Sheet, Section E.9.d.

[17] Original Plan Support Agreement, at p. 88, Term Sheet, Section E.10; Plan Support Agreement at p. 89, Term Sheet, Section E.10.

g.    *New COFINA Board:* On the effective date of the COFINA Plan, COFINA's board of directors will consists of three members appointed by the Governor, provided that (i) each member will be required to meet certain independence and qualification standards that will be agreed upon by the parties to the agreement, and (ii) holders of the existing senior COFINA bonds (including the COFINA Senior Bondholder Group) may submit up to three board member recommendations to the Governor (who will be under no obligation to appoint any of the recommended persons).[18]

h.    *Legislation:*

i.    Before the effective date of the COFINA Plan, legislation must have been enacted to, among other things, (i) establish the new COFINA board, (ii) permit the IVU, tax exemption, substitution of collateral and non-impairment covenants, and (iii) grant any other authorizations which may be required to implement the transactions contemplated by the parties, including (a) a determination that COFINA is the owner of the COFINA portion of the IVU under applicable law, (b) a grant of a statutory lien on the COFINA portion of the IVU, (c) enhanced financial reporting, (d) events of default and imposition of certain measures upon an event of default, (e) submission to the jurisdiction of the PROMESA Court, and (f) other customary terms, conditions, and covenants for similarly structured and supported municipal bonds.[19]

---

[18]   Original Plan Support Agreement, at p. 88, Term Sheet, at p. 96, Section L; Plan Support Agreement at p. 97, Term Sheet, Section L.

[19]   Original Plan Support Agreement, at p. 96, Term Sheet, Section M; Plan Support Agreement at p. 97, Term Sheet, Section M.

ii.  On November 15, 2018, the Governor of Puerto Rico signed into law Act no. 241-2018, to comply with this requirement of the Plan Support Agreement.

45.  This agreement was amended and restated on September 20, 2018 (the "Plan Support Agreement"), but retained substantially all of the terms set forth in the Original Plan Support Agreement, including those enumerated above.[20]

46.  The transactions set forth in the Plan Support Agreement would limit the loss on the value of the bonds that the COFINA Senior Bondholder Group held or managed.

47.  On February 12, 2019, the COFINA Plan of Adjustment became effective and was substantially consummated.

48.  On that date, the COFINA Senior Bondholder Group exchanged the bonds they held or managed for new COFINA bonds, identified with the following CUSIP numbers: 74529JPU3, 74529JQQ1, 74529JQJ7, 74529JQK4, 74529JQL2, 74529JQM0, 74529JQN8, 74529JPV1, 74529JQW8, 74529JPX7, 74529JPY5, 74529JPZ2, 74529JQA6, 74529JQY4, 74529JQP3.[21]

49.  The new COFINA bonds are equal or better in terms of collateral than the COFINA Senior Bondholder Group previously held or managed and are designed to meet investment-grade criteria.

50.  By exchanging the COFINA bonds they held or managed for the new COFINA bonds, the COFINA Senior Bondholder Group were able to limit the loss on the value (impairment) of the bonds they held or managed.

---

[20]  *See* Plan Support Agreement.

[21]  *See* Restructured Sales Tax Bonds, Series 2019A and Restructured Sales Tax Bonds, Series 2019B.

51.     The COFINA Senior Bondholder Group purchased their senior COFINA bonds at a deeply discounted rate.

52.     The COFINA Senior Bondholder Group made a substantial profit with this transaction.

53.     The bond exchange netted over a billion dollars in profits for the COFINA Senior Bondholder Group.

54.     Assuming that the COFINA Senior Bondholder Group bought their senior COFINA bonds at an average of 55 cents for every dollar (a roughly average price between 2014 and 2016), then the Plan Support Agreement would result in a massive, nearly billion dollar, payout on their initial investment:

| Hedge funds | Nominal value of senior COFINA debt | Value of purchase (assuming 55 cents on the dollar) | Repayment (at 93 cents on the dollar) | Profits |
|---|---|---|---|---|
| Aristeia Capital | $185,520,000 | $102,036,000 | $172,533,600 | $70,497,000 |
| Baupost Group | $452,413,003 | $248,827,151 | $420,744,092 | $171,916,941 |
| Canyon Capital Advisors | $246,075,000 | $135,341,250 | $228,849,750 | $93,508,500 |
| GoldenTree Asset Management | $732,239,032 | $402,731,467 | $680,982,299 | $278,250,832 |
| Scoggin Management | $54,425,100 | $29,933,805 | $50,615,343 | $20,681,538 |
| Taconic Capital | $180,284,093 | $99,156,251 | $167,664,206 | $68,507,955 |
| Tilden Park | $544,743,752 | $299,609,063 | $506,611,689 | $207,002,626 |
| Whitebox Advisors | $125,643,939 | $69,104,166 | $116,848,863 | $47,744,697 |
| **Totals** | **$2,695,542,155** | **$1,482,548,182** | **$2,506,854,201** | **$1,026,305,419** |

### III.
### FIRST CAUSE OF ACTION:
### COLLECTION OF MONEYS ON OVERDUE INVOICES

55. The COFINA Senior Bondholder Group owes Politank the amount of $170,822.08 for invoices issued prior to the date in which they notified the termination of the Agreement.

56. This debt is due and payable.

57. Since April 2018, Politank has been demanding payment of the outstanding amounts and, while the COFINA Senior Bondholder Group acknowledged that they owe this amount, they conditioned its payment to the waiver of Politank's other legal claims.

58. Thus, to this date, the COFINA Senior Bondholder Group has refused to pay for the outstanding invoices.

59. The COFINA Senior Bondholder Group is contractually liable for the payment of these invoices for services rendered.

60. The COFINA Senior Bondholder Group is also liable to Politank for interest on the overdue amounts at the legal interest rate of 6% annually ($28.08 *per diem*).

61. Accordingly, Politank demands judgment against the COFINA Senior Bondholder Group for the principal amount of $170,822.08, plus legal interest.

62. Politank also demands judgment against the COFINA Senior Bondholder Group in an amount to be determined by the Court for reasonable attorney fees because of their obstinacy in refusing to pay for their debt to Politank.

### IV.
### SECOND CAUSE OF ACTION:
### DECLARATORY JUDGMENT

63. The Agreement allows for its termination prior to the expiration of its term.

64. Termination requires at least 60-days' written notice, except that termination can be effected immediately if the termination is "for cause".

19

65.     Cause for termination is defined in the Agreement as a violation of law, rule or regulation, or the breach of certain terms of the Agreement.

66.     Politank has not incurred in any violation of law, rule or regulation, or breached any of the specified terms of the Agreement; therefore, the Defendants could not terminate the Agreement immediately but, rather, only with a 60-day written notification.

67.     The Defendants have refused to acknowledge any obligation to pay Politank for the period of 60 days prior to effective date of the termination.

68.     They have also insisted that they no longer have any obligation to pay Politank a success fee, alleging that they had cause to terminate the Agreement.

69.     In light of the aforementioned, an actual controversy exists as to the rights and legal relations of the parties under the Agreement.

70.     Accordingly, Politank demands judgment declaring that the COFINA Senior Bondholder Group could only terminate the Agreement upon 60-days' written notice.

71.     In consequence thereof, the COFINA Senior Bondholder Group is liable to Politank for the principal amount of $110,000.00, plus legal interest, for the monthly retainer fees incurred during the 60-day termination period.

72.     Politank also demands judgment against the COFINA Senior Bondholder Group in an amount to be determined by the Court for reasonable attorney fees because of their obstinacy in insisting that they had cause to terminate the Agreement immediately.

## V.
## THIRD CAUSE OF ACTION:
## SUCCESS FEE

73.     Pursuant to Articles 5.2 of the Agreement they signed with Politank, if the COFINA Senior Bondholder Group entered into an agreement which limited the impairment of the face

value of the bonds, they were bound to pay Politank a success fee within 30 days of the execution of such an agreement.

74. The COFINA Senior Bondholder Group entered into a consensual plan that limited the impairment of the face value of their bonds, at the latest, on August 29, 2018 when they executed the Original Plan Support Agreement.

75. The COFINA Senior Bondholder Group entered into this agreement within six months of the termination of the Agreement.

76. The Original Plan Support was amended and restated within six months of the termination of the Agreement.

77. All transactions required and obligations incurred in the Plan Support Agreement have been fulfilled.

78. Accordingly, the Plan Support Agreement has been fully executed.

79. The success fee owed to Politank was to be based on the recovery value of the Senior COFINA bonds held or managed by the COFINA Senior Bondholder Group, measured as the average value at which the new bonds traded 15 days after the execution of the agreement, divided by the average accreted value of the senior COFINA bonds, as of that same date.

80. On February 27, 2019, the average market value of each of the new COFINA bonds held by the COFINA Senior Bondholder Group was more than 95% of the average accreted value of the Senior COFINA bonds held or managed by the COFINA Senior Bondholder Group, calculated as of February 27, 2019.

81. For example, the following bonds (which amount to 41% of the new COFINA bond issue) are a representative sample of the new COFINA bond issuance in size, coupon, and maturity: 74529JQM0, 74529JPV1, and 74529JPX7.

a.      The average market value of these bonds on February 27, 2019 was: 99.5, 96.7, and 96.2, respectively.

b.      If we consider the accreted value to be equal to par value, then the recovery value of these three funds is as follows:

| CUSIP# | Average Market value | Recovery Value |
|---|---|---|
| 74529JQM0 | 99.5 | 99.5% |
| 74529JPV1 | 96.7 | 96.7% |
| 74529JPX7 | 96.2 | 96.2% |
| Weighted Average<br>To account for the relative size of each issuance | | 96.8% |

c.      The use of par value as accreted value does not take into account the fact that these bonds were purchased at a significantly lower cost than par value. Using the true accreted value for such a deeply discounted instrument (as provided in Article 5.2 of the Agreement) would yield a much higher Recovery Value, in excess of 100%.

82.      The Agreement provides that if the recovery value is more than 95%, Politank would be entitled to a success fee of $3,000,000.00.

83.      The term within which the COFINA Senior Bondholder Group was bound to pay Politank its success fee expired on March 12, 2019.

84.      Despite the fact that this debt is due and owing, to date, the COFINA Senior Bondholder Group has not made any attempt to pay Politank the success fee that was rightfully earned as per the terms of the Agreement.

85.      Accordingly, the COFINA Senior Bondholder Group is liable to Politank for the success fee due under the Agreement, which is estimated to be $3,000,000.00.

86.      The COFINA Senior Bondholder Group are also liable to Politank for legal interest on the success fee, from March 12, 2019 until the time the success fee is paid in full.

# VI.
## FOURTH CAUSE OF ACTION:
## LIBEL AND SLANDER

87.     The Defendants informed other third parties and their representatives — including holders of bonds issued by the Commonwealth of Puerto Rico and its instrumentalities—that their Agreement with Politank had been terminated for cause because Politank incurred in a violation of law.

88.     The Defendants also informed other third parties and their representatives—including holders of bonds issued by the Commonwealth of Puerto Rico and its instrumentalities—that Politank was breaching the Rules of Professional Conduct of Puerto Rico for attempting to collect on the invoices issued for the 60-day termination period.

89.     These statements are false because Politank did not commit any wrongdoing constituting cause under the Agreement and because Politank's attempts to collect on the debt owed by the COFINA Senior Bondholders do not constitute a breach of the Rules of Professional Conduct of Puerto Rico.

90.     These statements were made by the Defendants with full knowledge of their falsehood.

91.     Mr. Kirpalani and the COFINA Senior Bondholders Group's other attorneys are fully aware that a corporation is a separate entity from its shareholders and any allegations of personal wrongdoing by its shareholders cannot be attributed to the corporation.

92.     In any event, none of Politank's shareholders have been found to have incurred in any wrongdoing which would constitute cause under the Agreement.

93.     Mr. Kirpalani and the COFINA Senior Bondholders Group's other attorneys are also fully aware that there is no such thing as the "Rules of Professional Conduct of Puerto Rico" and that the ethical rules applicable to attorneys do not apply to corporations such as Politank.

94.     These statements by Mr. Kirpalani and the COFINA Senior Bondholder Group's other attorneys were made with malice, in order to harm Politank's reputation and standing with the COFINA Senior Bondholder Group, other holders of bonds issued by the Commonwealth of Puerto Rico and its instrumentalities, and Politank's other clients.

95.     Moreover, Mr. Kirpalani and the COFINA Senior Bondholder Group's other attorneys are competitors of Politank and have, throughout the term of the Agreement, attempted to discredit Politank before the COFINA Senior Bondholder Group by constantly taking credit for trade information gathered by Politank and for actions taken by Politank for the benefit of the COFINA Senior Bondholder Group, and disparaging Politank's work before the COFINA Senior Bondholder Group.

96.     The statements made by the Defendants have harmed Politank's reputation with other clients, and among the other holders of bonds issued by the Commonwealth and its instrumentalities.

97.     The statements made by the Defendants have caused other clients of Politank to cancel their consulting contracts.

98.     Accordingly, Politank demands judgment against the Defendants for damages caused by libelous and slanderous statements they published, of at least $ 1,000,000.00.

## VII.
## FIFTH CAUSE OF ACTION:
## TORTIOUS INTERFERENCE

99.     Prior to April 6, 2018, Politank had consulting contracts with other holders of bonds issued by the Commonwealth of Puerto Rico and its instrumentalities.

100.    These contracts were for one year, and were automatically renewed.

101.    The Defendants knew of these consulting contracts.

24

102. The Defendants communicated with these clients and their representatives to disparage Politank, which compelled them to cancel their contracts with Politank.

103. On April 6, 2018, one of Politank's other bondholder clients notified the termination their consulting contract with Politank.

104. The client informed Politank that it was pressured into making such decision by the Defendants' statements.

105. The Defendants intentionally and tortiously interfered with the contractual relationship between Politank and its other bondholder client.

106. The Defendants' actions are the direct cause of the decision by Politank's other bondholder clients to terminate their consulting contract with Politank.

107. Accordingly, Politank demands judgment against the Defendants for their tortious interference with Politank's contractual relations with its clients for, at least, $175,000.00.

## VII.
## DEMAND FOR JURY TRIAL

108. Politank demands that this action be tried by a jury.

WHEREFORE, Politank Corp. requests from this Honorable Court that, after a trial by jury, a judgment be issued against the Defendants as follows:

a. A judgment against the COFINA Senior Bondholder Group for the principal amount of $170,822.08, plus legal interest from the date each of the invoices became due and until each of these invoices is paid in full;

b. A judgment declaring that the COFINA Senior Bondholder Group could only terminate the Agreement upon 60-days' written notice and that, in consequence thereof, they are liable to Politank for the monthly retainer fees incurred during the 60-day

termination period in the principal amount of $110,000.00, plus legal interest from the date each of the invoices became due and until each of these invoices is paid in full;

c.      A judgment against the COFINA Senior Bondholder Group for the success fee due under the Agreement, which is estimated to be $3,000,000.00, plus legal interest from March 12, 2019 and until it is paid in full;

d.      A judgment against the Defendants for damages caused by libelous and slanderous statements they published, for at least $1,000,000.00;

e.      A judgment against the Defendants for their tortious interference with Politank's contractual relations with its clients, for at least, $175,000.00;

f.      A judgment against Defendants for attorney fees because of their obstinacy in refusing to pay for their debt to Politank;

g.      A judgment against Defendants for attorney fees because of their obstinacy in insisting that they had cause to terminate the Agreement immediately;

h.      A judgment against Defendants for the court costs and expenses incurred in this case; and

i.      Any further relief as the circumstances of this case may justify.


RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 4th day of October, 2019.

MONSERRATE SIMONET & GIERBOLINI
⌨: 101 Ave. San Patricio, Suite 1120
Guaynabo, Puerto Rico 00968-2646
☏: (787) 620-5300  📠: (787) 620-5305

s/ *Dora L. Monserrate-Peñagarícano*
Dora L. Monserrate Peñagarícano
U.S.D.C. – PR 212612
💻: dmonserrate@msglawpr.com

ESTUDIO LEGAL FERRAIUOLI
⌨: P.O. Box 195384
San Juan, Puerto Rico 00919-5384
☏: 787.510.5601

s/ *Veronica Ferraiuoli Hornedo*
Veronica Ferraiuoli Hornedo
U.S.D.C. – PR 213814
💻: vero@ferraiuoli.pr


⌨: P.O. Box 195384
San Juan, Puerto Rico 00919-5384
☏: 787.296.4730  (787) 787.296.4430

s/ *Francisco J. Domenech*
Francisco J. Domenech
U.S.D.C. – PR 221605
💻: fjdomenech@politank.com


**CERTIFICATE OF SERVICE**

I certify that, on this day, the foregoing was electronically filed with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/ *Veronica Ferraiuoli Hornedo*
Veronica Ferraiuoli Hornedo

27